RICHARD DALEY *vs.* AMERICAN PRINTING COMPANY.

Bristol.    October 23, 1889. — November 11, 1889.

Present: DEVENS, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Personal Injuries — Master and Servant — Negligence — Due Care — Evidence.*

An employee, whose duties required him to use an elevator operated by a belt passing over a pulley on a shaft, having occasion to use the elevator, and the belt being off the pulley, proceeded to put it on, and was injured by being caught by a set screw projecting from a collar on the shaft, which set screw was subsequently removed. In an action against the employer to recover for such injuries the plaintiff offered evidence to show that the belt was frequently off the pulley, that there was no one specially charged with the duty of putting it on, and that everybody having occasion to use the elevator had to put the belt on, which evidence was excluded, and a verdict directed for the defendant. Upon a bill of exceptions alleged by the plaintiff, it was not altogether clear that he was in the exercise of due care. *Held,* that the evidence excluded should have been admitted; and that it could not be said, as matter of law, that, if it had been admitted and believed, the verdict must have been for the defendant.

TORT for personal injuries. The declaration alleged that the " plaintiff was employed by defendant to work in its mill; that it was the duty of defendant to furnish plaintiff with proper, safe, and suitable machinery and implements to work; that defendant, wholly regardless of this duty, negligently and carelessly furnished plaintiff with dangerous and improper and defective machinery and implements with which to perform his work; that by reason of this negligence and carelessness of defendant, while plaintiff was engaged in the work for which he was employed by defendant, and while he was in the exercise of due care," the plaintiff was injured.

The answer, among other things, denied that the plaintiff was injured while engaged in the work for which he was employed by the defendant, and while in the exercise of due care, and alleged that he " was injured through his own carelessness, from a wilful disregard of his instructions, and from endeavoring to perform work beyond the scope of his duties, and which he had been expressly told never to do."

At the trial in the Superior Court, before *Bishop*, J., it appeared in evidence that the plaintiff was injured by being

caught in a set screw while in the act of putting a belt on a pulley which was connected with an elevator up and down which his work required him to pass, and which was about twenty feet from the elevator, and the only purpose of which was to run the elevator.

The plaintiff testified that he was twenty years old at the time of the accident; that he had worked for the defendant two years in all, as a spare hand in the dye-house, to do all the odd jobs; that he had been engaged in carrying cloth from the third story of the mill down to the basement to be dyed for about two weeks before the accident; that he had to use a truck, start from the dye-house, and go through the basement, and use an elevator to go up into the third story, and load the truck with cloth and carry it to the basement again, using the elevator; that there was no man to run the elevator regularly, but every man that came there had to run it; that he started it himself every time he had to use it; that the elevator was run by belting extending from the main shaft to three small pulleys, one to start it up, one to let it down, and a loose pulley in the centre; that just before the accident he was about to use the elevator to carry him from the third story to the basement; that at the time the elevator belt was off the main pulley on the main shaft; that another workman put it on for him, and he started the elevator down to the basement; and that " when the elevator got into the basement the belt came off again. The elevator was at the third story when the belt was put on, then it was started down; when it came down, the belt came off again. Then I went up to put it on and got caught. There was a large open hogshead directly under the shafting standing on the basement floor; there was a plank laid across this hogshead. I got on top of this hogshead standing on the plank to put the belt on. Then I got caught on this set screw on the right side. I had my back to the elevator, standing between the wall and the pulley, and while in that position, with the belt in my hand, was caught by the screw and whirled round the shafting and thrown off. After I was caught I looked and noticed this set screw right where it had caught me. I did not notice it before. I tried to get away to hold back to save myself from being carried around. I was

whirled round the shafting, and all my clothes torn off. I noticed the shafting this morning. The collar and set screw were moved. It was right up against the hanger at the time I was injured, on that part of the shaft that came between the wheel and the hanger. The collar and set screw were there at that time; they are not there now. The collar projected an inch and a half or two inches from the hanger. The set screw was placed on the collar to fasten it to the shaft, and projected between one and two inches from the shaft, and was about an inch from the collar."

The plaintiff was asked, " Was there anybody whose duty it was to put the belt on the pulley when it was off? " The plaintiff was permitted, against the objection of the defendant, to answer this question, and replied in the negative; and the defendant excepted.

On cross-examination the plaintiff testified: " When I was caught, I got up on the plank on the hogshead right under the shafting to put on the belt. The pulleys were in motion, and turning at the rate of one hundred and fifty revolutions a minute. Just as quick as I got caught, I looked down and noticed the set screw in my clothing. The plank was between six inches and a foot wide. It was rather dark in the basement, . . . always dark in there. . . . When I was set to carrying cloth from the running-room to the dye-room I knew how to run the elevator and did not need any instructions. The pulleys connected with the elevator were in a rather dark position, you could not see them distinctly. The pulleys themselves were all in sight. You could not see the small parts, any set screw. The main portion of the machinery was all in sight, and had been so during the whole time I worked there. There was nothing about the situation of the pulleys and the arrangement with relation to each other but what I had seen all the time I was working there."

The plaintiff called as a witness one Kelley, and, after he had testified that he had worked for the defendant at intervals for twenty years, and was working for it when the plaintiff was injured, proposed to show by him that the belt was frequently off, how it was put on, and who put it on; and " that there was not anybody specially charged with that; that everybody did it

that had to use the elevator, — had to put the belt on." The judge excluded the evidence, and the plaintiff excepted.

The defendant called as a witness one Catterall, who testified that he had been for many years in the defendant's employment; that there was a man in the defendant's employment whose duty it was to repair the belts; that he was called the beltman; that if there was anybody in the works that wanted any belts fixed they went to him; that he attended to putting on belts, and in general to everything connected with the belts; that he knew where this belt was, and, if it came off half a dozen times a day, he understood they would go to the beltman to get it put on; and that he had seen people come to the beltman to have him put belts off and on.

The judge, at the defendant's request, directed a verdict for the defendant; and the plaintiff alleged exceptions.

*J. W. Cummings*, for the plaintiff.

*J. M. Morton*, (*A. J. Jennings* with him,) for the defendant.

C. ALLEN, J. There was evidence tending to show that the plaintiff was employed on work which required him to use the elevator; that the elevator was operated by a belt which passed over a pulley situated about twenty feet from the elevator; that the belt was off from the pulley; and that the plaintiff's injury occurred while he was putting it on, in order to enable him to use the elevator in doing his work. It seems to have become a question, at the trial, whether it was necessary for the plaintiff himself to attend to putting on the belt, under the circumstances which then existed. The plaintiff had been allowed, subject to an exception by the defendant, to show that there was nobody whose duty it was to put the belt on when it was off; and he afterwards called a witness, by whom he proposed to show further that the belt was frequently off, how it was put on, and who put it on; and " that there was not anybody specially charged with that; that everybody did it that had to use the elevator, — had to put the belt on." This evidence was excluded. We think it was competent, as one important element of the plaintiff's case was to show that he was in the line of his duty in attempting to put on the belt at the time when he was hurt. The fact that the defendant afterwards introduced testimony to show that there was another man whose duty it was to

put on the belts, serves to show the importance to the plaintiff of the evidence which was excluded; and indeed this·also appears by the defendant's answer, as well as by the argument which has been addressed to us in its behalf. The jury might have believed the plaintiff's witness, if he had been allowed to testify, rather than the defendant's.

This material evidence having been excluded, there must be a new trial, unless it can be seen that, even if it had been admitted and believed, still the verdict must have been for the defendant. The ground upon which the case was withdrawn from the jury is not stated. We cannot say, as matter of law, that no sufficient evidence was introduced or offered of negligence on the part of the defendant, or of freedom from negligence on the part of the plaintiff. He offered to show that the belt was frequently off. This evidence, if admitted, would have had a tendency to show that the machinery was not suitable, and that it needed frequent readjustment. The testimony in respect to the projection of the set screw, and to its subsequent removal, was in the same direction. If the machinery was found to be unsuitable, and if the plaintiff was within the line of his duty in attempting to adjust the belt, we cannot say that he was not entitled to go to the jury on the question of whether he was in the exercise of due care. The evidence bearing upon this point, as reported, is not altogether clear, and does not enable us to understand fully what it was necessary to do in order to adjust the belt, or how it was usually put on the pulley when it had got off.

*Exceptions sustained.*