E. D. CHADDICK AND F. I. GOWEN, *Receivers of Choctaw Coal and Railway Company*, v. WALLIE LINDSAY.

1. RAILROAD—*Laws Relating to.* A statute which provides that in case of the refusal of a (railroad) corporation or its agents to take and transport any passenger or property, as provided in the preceding section, or in case of the neglect or refusal of such corporation or its agents to discharge or deliver passengers or property at the regularly appointed places under the laws which regulate common carriers, such corporation shall pay to the party aggrieved all damages which shall be sustained thereby, with costs of action, imposes no duty upon the railroad company to erect stations or warehouses for receiving and delivering freight.

2. RAILROAD EMPLOYE—*Knowledge of—Damages.* When the employe of a railroad company takes employment under a company, he is charged with knowledge as to the existence of stations and platforms, and with such conveniences as the company may have for the handling of baggage, and accepts his service from the railroad company with full knowledge of any liability there may be of injury in the absence of such stations, platforms and conveniences for the handling and storage of baggage, is capable of understanding the danger, and is fully informed of all the facts, and if there is negligence he is chargeable with it, just as his employer would be, and he cannot recover damages for the absence of such conveniences.

*Error from the District Court of Oklahoma County.*

STATEMENT OF FACTS.

The plaintiff, Lindsay, was a brakeman of the plaintiff in error company at the time referred to in the petition.

It was his duty to assist passengers off and on the trains and to aid in the loading and unloading of baggage. On the morning of July 5, 1892, there was a passenger from Oklahoma City, who had a trunk to be carried to the town of Yukon. He was told by the baggageman that the company would not check his trunk, but would carry it to Yukon for him and deliver it to him, there on the ground, at his own risk, he to take possession of it upon the arrival of the train at Yukon. The trunk was unloaded at Yukon. The defendant in error, Lindsay, removing it from the car and rolling it six or eight feet from the track. The train went on to El Reno, the western terminus, returned at noon to Oklahoma City, the eastern terminus of the road, and again returned westward in the afternoon, when the trunk was still standing upon the right of way at Yukon. It had, however, in the meantime, been moved nearer to the track in some way not disclosed by the testimony. The engineer of the train saw the trunk before reaching it, in time to have stopped the train, but did not do it, and just before the train was ready to stop the trunk was struck by the engine, which threw it around so it struck the steps of the front car, on which Wallie Lindsay, the plaintiff, was standing, breaking the steps off from under his feet, threw him him down, and the train ran over his right arm, injuring it so that amputation was required. The evidence showed that the defendant in error had run on the train as brakeman for nineteen days, passing the station of Yukon four times a day, and that he had passed that point seventy-five times, and knew that there was no depot or platform there.

This action was begun in the district court on the twenty-seventh day of October, 1892; the petition, after reciting the accident, averred that the trunk had been

"carelessly placed and left by the defendant railroad company, so near to the track that in passing the steps of the car upon which the plaintiff was standing ran against and struck the trunk, and the steps were thereby torn from the car, throwing the plaintiff to the ground, and resulting in the injury mentioned."

The defendant answered by a general denial.

The defendant in error, over the objection of the plaintiff in error, was permitted to introduce evidence to show that there was no platform, depot building or warehouse, and no station agent at the station of Yukon. After the introduction of the evidence, the defendant in error was permitted to amend his petition, by which amendment it was declared, "that the injury and damage to the defendant in error was further occasioned and caused by the neglect and failure of the defendants to furnish and afford sufficient accommodations in the way of platform, depot and warehouse, for the property offered for transportation to it, for and to said town of Yukon, then a station on said railroad."

At the close of the plaintiff's testimony a demurrer of the defendant, plaintiff in error, to the evidence offered by the plaintiff, was overruled.

Special interrogatories were submitted to the jury at the request of the defendants and findings of fact made thereon. To interrogatory 3, "Did the engineer see the trunk before the engine got to it, in going west in the afternoon on the day in question in time to stop the train and avoid the accident?" the jury answered, "Yes, sir."

"5. Whose negligence, if anyone's caused the injury to the plaintiff, and in what did such negligence consist? Ans. The negligence of the Choctaw Coal and Railway company, and consisted in a failure to provide

proper facilities for the safe handling of baggage at Yukon."

The jury found a general verdict in favor of the plaintiff below and assessed his damages at four thousand dollars. A motion for a new trial was made and overruled, and the case brought here upon assignment of error made by the defendant below, including the averment, that (1) the court erred in overruling the demurrer of the defendant below to the evidence of the plaintiff, at the close of the plaintiff's testimony, and (2) in admitting, over the objection of the defendants below, testimony in regard to defendants not having a depot and depot facilities, such as a depot building, platform, agent or warehouse at the town of Yukon, and (3) upon the admission and rejection of instructions, and (4) because the special findings of the jury were inconsistent with their general verdict, and (5) because the court erred in overruling the motion for a new trial.

*J. W. McLoud* and *C. B. Stuart,* for plaintiff in error;

*J. W. Johnson* and *H. H. Howard,* for defendant in error.

The opinion of the court was delivered by

McATEE, J.:   Over the objection of the plaintiffs in error the court instructed the jury, that:

"It is the duty of every railroad company, having and operating a line of road within this territory, or those having charge of its affairs, to furnish sufficient accommodations for property, such as trunks, at all stopping places established within said territory for receiving or discharging such property; and if you shall believe from the evidence that defendants knowingly neglected and failed to furnish such accommodations at the town of

Yukon, and that said town of Yukon was and had been a regular stopping place upon the line of defendants' road, for the purpose of receiving and discharging such property, at and prior to the date of the injury complained of, and that, by reason of such neglect and failure, the plaintiff received said injury, and that such neglect and failure was one of the proximate causes of said injury, then you should find for the plaintiff."

This instruction was founded upon § 1061 of the Statutes of 1890, which is identical with § 1036 of the Statutes of 1893, which is as follows:

"Sec. 1036. Every such railroad corporation shall start and run its cars, for the transportation of persons and property, at regular times to be fixed by public notice, and shall furnish sufficient accommodation for the transportation of all such passengers and property as shall, within a reasonable time previous thereto, offer or be offered, for transportation, at the place of starting, or at the junction of other railroads, and at siding or stopping places established for receiving and discharging way passengers and freight, and shall take, transport, and discharge passengers and property, at, from and to, such places, on the due payment of tolls, freight, or fare therefor."

This is a statute governing and directing transportation both of passengers and of property. It provides for transportation alone. The provision is that "it shall furnish sufficient accommodation for the transportation of all such passengers and property" as shall be "offered for transportation at the place of starting, or at the junction of other railroads, and at siding or stopping places." * *

There is no provision here requiring railroads to erect station houses or platforms or to keep station agents. The sufficient accommodation which shall be furnished is for "transportation," and the section immediately

thereafter, namely, § 1037, provides the penalty for violation of the section referred to, in the following terms:

"SEC. 1037. In case of the refusal of such corporation or its agents to take or transport any passenger or property as provided in the preceding section, or in case of the neglect or refusal of such corporation or its agents to discharge or deliver passengers or property at the regularly appointed places, under the laws which regulate common carriers, such corporation shall pay to the party aggrieved all damages which shall be sustained thereby, with costs of action."

The penalty here imposed for a violation of the provisions of § 1036 is simply "in case of the refusal  *  * to take or transport  *  *  or in case of the neglect or refusal  *  *  to discharge or deliver." Here, then, in the section providing the penalty for a violation of the duty, in which it must be supposed that the punishment imposed would be co-extensive with the duty violated, the provision is a punishment for a refusal to transport alone, and it cannot be inferred from this section of the statute that any obligation has been thereby or therein provided requiring the railroads to provide depots for passengers, awaiting transportation.

Upon a statute of similar character in New York, which is identical in its terms in all material points, the supreme court of that state has declared, that:

"The power of the company to provide such building is, under the statutes, a permissive one only. If the corporation chooses to exercise it, it may. The statute does not exact it. It specifies certain things which the company shall not do. It specifies many things which it shall do, as, among others, 'start and run its cars for the transportation of passengers and property at regular times, to be fixed by public notice.'"

The opinion of the court, after reciting the statute, proceeds to say, that:

"The statute is peremptory as to many matters, but it nowhere says that for its intending passengers or waiting freights, cover by building of any kind shall be provided. As to that the statute imports an authority only, not a command, to be availed of at the option of the company in the discretion of its directors." (*People v. N. Y. L. E. & W. R. Co.*, 104 N. Y. 58).

And the duty of locating station houses and warehouses is not one which, in the absence of express statutory provision, the courts have undertaken to impose upon railroad companies or compel the erection of.

It was said by the supreme court of the United States in *N. W. P. R. v. Dustin*, 142 U. S. 492, that:

"The location of stations and warehouses for receiving and delivering passengers and freight involves a comprehensive view of the interests of the public as well as of the corporation and its stockholders, and a consideration of many circumstances concerning the amount of population and business, at, or near, or within convenient access to one point or another, which are more appropriate to be determined by the directors, or, in case of abuse of their discretion, by the legislature, or by administrative boards entrusted by the legislature with that duty, than by the ordinary judicial tribunals."

And further, that:

"The defendant's charter * * enacts that the road shall be constructed * * with all the necessary draws, culverts, * * stations, * * and all other appurtenances. The words last quoted are but a general expression of what would be otherwise implied by law, and cover all structures of every kind needed for the completion and maintenance of the railroad. They cannot be construed as imposing any specific duty, or as controlling the discretion in these respects of a corporation entrusted

with such large discretionary powers upon the more important questions of the course and *termini* of its road."

The measure of duty from the railroad companies, as here stated, is that which may be refused to passengers, and the measure of duty is not the same to the employe of the road.   As an employe of the plaintiff in error company, the defendant in error was familiar with the fact that there was no platform, warehouse or station agent at Yukon.   (*Henry v. L. S. & M. S. R. Co.* 49 Mich. 494; *Finnell v. D. L. & W. R. R. Co.* 129 N. Y. 669; *Aerkfetz v. Humphrey*, 145 U. S. 418).

He had been employed for a number of days on the line, had passed the point many times and accepted and continued in his employment and had notice of all the conditions as they existed.   As to the defendant in error, the railroad company was under no legal obligations to furnish sufficient accommodations for property, such as trunks, at all stopping places established within the territory for receiving or discharging such property, nor is it liable to the defendant in error for any failure to furnish such accommodations at the town of Yukon for the purpose of receiving and discharging such property, and the instruction complained of was, therefore, erroneous.

The court was asked by the defendant to give the folowing instruction, which was refused and excepted to by the defendants:

"You are instructed that as the plaintiff knew that the defendants had no depot or agent at Yukon, and knew what defendants' custom or habit was in regard to unloading and leaving trunks and baggage at the town of Yukon, and knew that the trunk was unloaded at Yukon in the forenoon of the day in question, the plaintiff assumed whatever danger there was or might be to him on account of unloaded trunks, and of the trunk in question at Yukon, as one of the ordinary risks, hazards and

dangers incident to his employment, which were, or in the very nature of things could have been, as well known to him as to the defendants; and if you find that the injury to plaintiff resulted from the fact of the defendants permitting the trunk to remain upon their right of way at Yukon, during the day in question, you are instructed, as a matter of law, that such injury was the result of the risks, dangers and hazard incident to plaintiff's employment, and which were known to him, or could have been known to him, and he cannot recover in this action."

This instruction should have been given. It states the law upon the proposition which is, that when the defendant took employment with the railroad company, he took it with a knowledge of the fact that there was no station, no platform and no station agent at Yukon, and that the baggage would have to be handled in the manner which is described in the statement of facts in this case, and that if there was any peculiar liability to injury in consequence of the conditions existing there, that he accepted his service from the railroad company with a full knowledge of such liability to injury, and to the extra risk which was as apparent to him as to the railroad company, if it existed at all. The rule is well established and is applicable in this case. It has been variously expressed in the cases and text books.

It was said in one case, that:

"When a master employs a servant to do a particular work with a particular kind of instrument or machine    *    *    *    the servant agrees to use in the service that particular kind of implement or machine, and if, under such circumstances, harm comes to him, it must be held to have been taken into consideration by him as among the risks he assumed in the service." (*Railway Co. v. Davis*, 54 Ark. 393).

And in another, that:

"If the railway company was guilty of negligence, the plaintiff must also have been guilty of negligence; for he had the same means of knowing the condition of the tracks in that vicinity as the company had, and he was as competent to determine their safety or unsafety, as the company was, and therefore he cannot recover. * * If it is negligence, and injury results, then no recovery can be had, because of the culpable contributory negligence of the servant; but if it is not negligence on the part of the servant, then neither can it be negligence on the part of the master. What the servant may lawfully do without negligence, the master may lawfully hire him to do without negligence. The master cannot be bound to take greater care of the servant than the servant takes of himself. * * There cannot be negligence on the part of the one and not on the part of the other where both are capable of understanding the danger and both are fully informed as to all the facts." (*Rush v. Mo. Pac. R. Co.*, 36 Kan. 129).

It was said by Judge Cooley, in the case of *Piquegno v. C. & G. T. R. Co.*, 52 Mich. 40, that:

"A stick, a stone, a piece of baggage, or freight, lying near the track might, in like manner, cause a brakeman to stumble and fall, and the company, at its peril, would have to provide against the likelihood of such a casualty. So stringent a rule has never been applied to railroad companies, nor could it be without making them insurers against a species of accident which could seldom occur without carelessness on the part of the person injured."

And it was said in *Clark v. Railway Co.*, 23 Minn. 129, that:

"If a servant accepts service with a knowlege of the provision of structures from which he has occasion to apprehend danger, he cannot require the master to make changes so as to obviate danger, or hold him liable for damages in case of injury."

And it was held in another case that the "servant

40—v.

assumes the dangers from causes open to observation by him and which it required no special training or skill to foresee were likely to occasion him harm, even though at the time of injury he was in the performance of duties which he did not contract to render."

The instruction which was refused manifestly contained the law which should be applied to the facts in the case, and the law upon this proposition was not given elsewhere in the instructions of the court. It was therefore reversible error to refuse the request, and the petition in error will be sustained upon that ground.

The plaintiff in error also requested an instruction to the court in the following language, that:

"The court instructs the jury that the plaintiff was the felow servant of the engineer, in charge of the train in question, and if you find that the engineer, McClelland, saw the trunk as the train was going west in the afternoon, in time to have stopped to train and to have prevented the accident which it is alleged caused the injury, the plaintiff cannot recover."

To this instruction, as proposed, after striking out the words, "the plaintiff cannot recover," the court added the following words:

"And if you further find from the evidence that said engineer knew, or, by the exercise of ordinary and reasonable care, should have known, that said trunk was in such position as to be struck by said train, in time to have stopped said train and prevented the collision and the injury alleged in plaintiff's petition; and if you further find from the evidence that said engineer was the only proximate cause of the injury complained of, then the plaintiff cannot recover."

Under the petition as amended, under the opening statement of counsel for the plaintiff and under the evidence in the case, the only other proximate cause of the

injury complained of, under consideration in the case at all, was the "neglect and failure on the part of the defendants to furnish sufficient accommodations in the way of platform, depot and warehouse for the property offered for transportation to it at the town of Yukon." The amendment of the court, therefore, again introduced the absence of the station and warehouse facilities, as a proximate cause upon which the jury might render a verdict, which was erroneous.

While we do not determine that the instruction as presented by the defendant correctly states the law, it has been declared by the supreme court of the United States in *Randall v. B. & O. Ry. Co.*, 109 U. S. 478, that:

"The general rule of law is now firmly established that one who enters the service of another takes upon himself the ordinary risks of the negligent acts of his fellow servants in the course of the employment. * * It is not necessary, for the purpose of this case, to undertake to lay down a precise and exhaustive definition of the general rule in this respect. * * Because persons standing in such relation to one another as did this plaintiff and brakeman and the engineer, are fellow servants, according to the very great preponderance of judicial authority in this country. * * They are employed and paid by the same master. The duties of the two bring them to work at the same place at the same time, so that the negligence of the one in doing his work may injure the other in doing his work. Their separate services have an immediate common object, the moving of the trains. Neither works under the orders or control of the other. Each by entering into his contract of service, takes the risk of the negligence of the other in performing his service; neither can maintain an action for an injury, caused by the negligence of the other, against the corporation, their common master. (*Herbert v. Butler*, 97 U. S. 319; *Griggs v. Houston*, 104 U. S. 553).

It was said in *Pleasants v. Fant*, 22 Wall. 121, that:

"It is the duty of the court in its relation to the jury to protect parties from unjust verdicts arising from the ignorance of the rules of law and evidence, * * in the conduct of the trial."

In *Gowen v. Harley*, 12 U. S. Appeals, 574, it is said, that:

"It is the duty of the trial court, at the close of the evidence to direct the jury for the party who is clearly entitled to recover, where it would be its duty to set aside a verdict in favor of his opponent if one were rendered."

It is unnecessary to treat other errors which have been assigned.

The case will be reversed and remanded, with direction to enter judgment for the plaintiffs in error.

Keaton, J., having presided in the court below, not sitting; all the other Justices concurring.