NATHAN NEELEY v. SOUTHWESTERN COTTON SEED OIL COMPANY.

(Filed September 10, 1903.)

1. VERDICT—May be Ordered, When. The court may withdraw a case from the jury and direct a verdict for the defendant where the evidence is undisputed, or is of such conclusive character that the court in the exercise of a sound judicial discretion, would be compelled to set aside a verdict returned in opposition to it.

2. NEGLIGENCE—Not Presumed, When. In case of an accident to an employe, the fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employe to establish that the accident was the result of the negligence of the employer.

3. EMPLOYER—Duty of—Assuming the Risk. It is the duty of the employer to furnish the employe a reasonably safe place to work, and reasonably safe appliances with which to work, reasonably safe material to work with and reasonably competent fellow servants. He is required to furnish appliances free from defects

discoverable by the exercise of ordinary care, and the employe has the right to rely upon this duty having been performed, and while in entering the employment he assumes the ordinary risks incident to the business, he does not assume the risk arising from the neglect of the employer to perform the positive duty owing to the employe with respect to appliances furnished. The exception to this rule is that where the employe receives for use a defective appliance, and with knowledge of the defect and its dangerous character, continues to use it without notice to his employer, he cannot recover for an injury resulting from such defective appliance thus voluntarily used.

4. **ASSUMPTION OF THE RISK OF EMPLOYMENT.** A servant entering into an employment which is hazardous, assumes the usual risks incident to such service, and those which are apparent to ordinary observation, and, when he accepts or continues in the service with knowledge of the character of appliances from which injury may be apprehended, he also assumes the hazards incident to such situation.

5. **SAME—Defined.** The risks assumed by an employe are such perils as exist after the employer has used due care and precaution to guard the former against danger, by providing him a reasonably safe place to work in, reasonably safe appliances to work with, reasonably safe materials to work upon, and reasonably competent fellow servants to work with, but when the employe undertakes to use defective or unsafe appliances with knowledge of such unsafe condition, he assumes the increased risk of danger, and the employer is relieved from responsibility to the employe by reason of the employe's knowledge.

6. **EMPLOYER—Duty of—Not Delegated.** It is the duty of the employer to provide the employe with reasonably safe machinery, tools and appliances with which to do his work, and he cannot relieve himself from liability by delegating this duty to another, and in case of injury resulting from defective or unsafe appliances, the relations of fellow servants cannot arise.

7. **EMPLOYER—Notice to—Effect of.** If an employe discovers that appliances furnished him by the employer with which to do his work are defective or dangerous, and informs the employer of such defect and requests that the employer remedy such defect so as to avoid increased risk, and the employer gives him assurances that the defect will be remedied, and relying upon such assurance the employe continues in the service, but before the repairs are made, an injury results to the employe by reason of such defective appliances, the employe will ordinarily be entitled to recover. But if, after giving such assurances and prior to the accident the employer directly or indirectly revokes his former promise to repair or remedy, the employe will not in such event be warranted in further continuing his service based upon such promise to repair, and under such circumstances the question of contributory negligence should ordinarily be left to the jury.

8. CONTRIBUTORY NEGLIGENCE—When Question of Law. When on the trial of a cause a question is presented as to the existence of negligence or contributory negligence, and the facts which the evidence reasonably tends to establish are such that all reasonable men must draw the same conclusions from them, the case is one of law for the court, but if fair minded men may honestly draw different conclusions, the cause should not be withdrawn from the jury.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before B. F. Burwell, Trial Judge.*

*Hays & McMechan* and *M. Fulton,* for plaintiff in error.

*Howard & Ames,* for defendant in error.

### STATEMENT OF FACTS.

The plaintiff, Neeley, brought this action in the district court of Oklahoma county to recover damages from the Southwestern Cotton Seed Oil Company for personal injuries received while in the employ of the defendant. The plaintiff was a common day laborer, and had been in the employ of the defendant as such for only a few weeks when the accident occurred. The defendant is a corporation engaged in the manufacture of cotton seed oil and cotton seed products at their plant at Oklahoma City. As part of their buildings, was a large room about thirty by fifty feet, containing portions of their mill machinery; through this room about eighteen feet from the floor, extended a steel revolving shaft, on which were pulleys, and from which connecting belts drove these various machines. The floor was smooth and slick from the oil; one of the pulleys on this shaft carried an eight inch leather belt to the pulley on the "linters." Occasionally this belt slipped off the upper pulley while the machinery was in motion, and it was necessary to go up to the upper shaft to replace it. It is usual and customary in oil

mills of this character to have a foot board placed a few feet below the shaft, upon which persons can walk and stand when oiling or repairing the machinery or adjusting the belts. This mill had only been completed one season, and no foot board had been placed in position. The company had procured to be made for its use a ladder about eighteen feet long, constructed of two 2 by 4 pine scantlings, dressed down to about 2 by 3 1-2 for side pieces, upon which steps or cross pieces were nailed, made from 1 by 3 boards. This ladder was weak on one side, and had a tendency to turn sideways with the weight of a person, and to avoid this defect, a 1 by 4 board about two to three feet long had been nailed on the inner side of the right hand scantling. This ladder was furnished by the company to be used for placing the belt upon the upper shaft or pulley. In order to perform this difficult feat, the lower end of the ladder was placed upon the floor, and the upper end rested against the revolving shaft; one employe then ascended the ladder and lifted the belt in place, while another employe went upon some part of the machinery and held the other end in place, and the two operating together thus readjusted the belt to its proper place. It required from the man upon the ladder a force or resistence of from one to two hundred pounds to force the belt onto the pulley. All the employes who had used this ladder considered it weak and limber, and two or three had called the attention of the superintendent to this fact, and requested that the company put up a foot board to avoid the anticipated danger. The superintendent informed the employes who gave him this warning that he understood his business, and that if they did not want to use the ladder, he would get

·some one who would.   On the 31st day of January, 1899, the plaintiff, who had been in the employ of the company about two weeks as a laborer, was engaged in operating the machinery in the room in question, when the belt came off and he and a fellow servant attempted to replace it.   The plaintiff placed the ladder in position and ascended it and took the belt in his hands and was in the act of placing it on the pulley when the ladder gave down and fell  to  the floor with the plaintiff.   The plaintiff received injuries resulting in a severe shock, a wound on the head and the fracture of the bones in both wrists.

After the fall, one side of the ladder was found broken apart, and the piece that had been nailed on to strengthen it was both broken and split.   About one week before the accident the night foreman had told the plaintiff that he intended to put up a foot board along the shafting in question, and about three days before the accident the plaintiff told the foreman that the ladder seemed unsafe, and asked him to put up a foot board.   To this request the reply was: "That ladder is all right, and you boys go ahead, and if it don't suit you, and you can't do this work, I'll get men that can do it."   The plaintiff previous to the accident was strong and able bodied, 33 years old, and a common laborer, and has been disabled from work ever since.

The plaintiff on the trial of the cause to a jury introduced evidence tending to establish the foregoing state of facts. The defendant demurred to the evidence and the court sustained the demurrer and rendered judgment for the defendant.   From this judgment the plaintiff has appealed, and we are called upon to review the proceedings below.

Opinion of the court by

BURFORD, C. J.: In the briefs presented for our con-_ sideration, a great many cases are cited from the various state courts and quite a number from the supreme court of the United States. The questions embraced in this case have been extensively discussed by the jurists and authors, and no court or text writer has ever been able to harmonize the numerous decisions. Every question presented could be decided either way, and have ample authority for its support. The supreme court of the United States has in the last quarter of a century had before it every legal proposition that is likely to arise in a personal injury case, and enunciated rules which ought to be safe for a court to follow which has no state constitution, statute or judicial precedents to control or embarass it. It has been the policy of this court, on questions where there is a seeming conflict between the state courts and the supreme court of the United States, to follow that court which has direct appellate supervision over the decisions of this court, and we are content to continue that policy. There are a few general principles established by repeated decisions of that court which when applied to the facts in the case under consideration, control every question presented in the record. We will not attempt to follow the arguments presented in the briefs upon either side, but will endeavor to determine each question which, in our judgment, may be fairly raised by the record in this case, and argued in the briefs.

When may a court take a case from the jury and direct a verdict? "If the evidence, giving the plaintiff the benefit of every inference to be fairly drawn from it, so conclusively

established contributory negligence on his part, as would have compelled the trial court in the exercise of a sound judicial discretion to set aside any verdict returned in his favor, then the direction to find for defendant was proper." (*Kane v. Northern Central R. R. Co.*, 128 U. S. 91; *Phoenix Ins. Co. v. Doster*, 106 U. S. 130; *Randall v. B. & O. R. R. Co.*, 109 U. S. 478; *Goodlett v. Louisville R. R. Co.*, 122 U. S. 391; *Jones v. East Tenn. V. & G. R. R.*, 128 U. S. 443; *Dunlap v. N. E. R. R. Co.*, 130 U. S. 649; *T. P. R. R. Co. v. Cox*, 145 U. S. 593; *Gardner v. Mich. Central R. R. Co.*, 150 U. S. 349.)

Mr. Justice Brewer, in discussing this question in *Patton v. Texas and Pacific Ry. Co.*, 179 U. S. 658, very appropriately said:

"It is well settled that the court may withdraw a case from them altogether and direct a verdict for the plaintiff or defendant, as the one or the other may be proper, where the evidence is undisputed, or is of such conclusive character that a court in the exercise of a sound judicial discretion would be compelled to set aside a verdict returned in opposition to it. It is undoubtedly true that cases are not to be lightly taken from the jury; that jurors are the recognized triers of questions of fact, and that ordinarily negligence is so far a question of fact as to be properly submitted to and determined by them. Hence it is that seldom an appellate court reverses the action of a trial court in declining to give a peremptory instruction for a verdict one way or the other. At the same time, the judge is primarily responsible for the just outcome of the trial. He is not a mere moderator of a town meeting, submitting questions to the jury for determination, nor simply ruling on the admissibility of testimony, but one who in our jurisprudence stands charged with full responsibility. He has the same opportunity that jurors

have for seeing the witnesses, for noting all those matters in a trial not capable of record, and when in his deliberate opinion there is no excuse for a verdict save in favor of one party, and he so rules by instructions to that effect, an appellate court will pay large respect to his judgment."

It requires a more extended examination of the facts and reasonable inferences therefrom in plaintiff's favor, in order to determine whether or not the court acted within the foregoing rule in taking the case from the jury.

The rules of law governing this case are those relating to employer and employe. These rules are different from those which govern in cases of accidents to passengers or to strangers. In the case of an employe, "The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employe to establish that the employer has been guilty of negligence." "And it is not sufficient for the employe to show that the employer may have been guilty of negligence; the evidence must point to the fact that he was." (*Patton v. Texas and Pacific R. R. Co.,* 179 U. S. 658.)

The duty that an employer owes to his employe has been extensively discussed, and the supreme court of the United States has enunciated the rule a number of times. In *Northern Pacific Railroad Co. v. Peterson,* 162 U. S. 351, it is said:

"The general rule is that those entering into the service of a common master becomes thereby engaged in a common service and are fellow servants, and *prima facie* the common master is not liable for the negligence of one of his servants which has resulted in an injury to a fellow servant. There are, however, some duties which a master owes as such to a servant entering his employment. He owes the

duty to provide such servant with a reasonably safe place to work in, having reference to the character of the employment in which the servant is engaged. He also owes the duty of providing reasonably safe tools, appliances and machinery for the accomplishment of the work necessary to be done. He must exercise proper diligence in the employment of reasonably safe and competent men to perform their respective duties, and it has been held in many states that the master owes the further duty of adopting and promulgating safe and proper rules for the conduct of his business, including the government of the machinery and the running of trains on a railroad track. It the master be neglectful in any of these matters, it is a neglect of a duty which he personally owes to his employes, and if the employe suffer damage on account thereof, the master is liable. If instead of personally performing these obligations, the master engages another to do them for him, he is liable for the neglect of that other, which, in such case, is not the neglect of a fellow servant; no matter what his position as to other matters, but is the neglect of the master to do those things which it is the duty of the master to perform as such."

This doctrine was cited, quoted and approved in the later case of *New England Railroad Company v. Conroy,* 175 U. S. 323, 338. It was also said in *Washington & C. R. R. Co. v. McDade,* 135 U. S. 554-570:

"Neither individuals or corporations are bound as employers to insure the absolute safety of the machinery or mechanical appliances which they provide for the use of their employes. Nor are they bound to supply the best and safest or newest of those appliances for the purpose of securing the safety of those who are thus employed. They are, however, bound to use all reasonable care and prudence for the safety of those in their service by providing them with machinery reasonably safe and suitable for the use of the latter. If the employer or master fails in this duty of precaution and care,

he is responsible for any injury which may happen through a defect of machinery which was or ought to have been known to him, and was unknown to the employe or servant."

And the foregoing was quoted with approval in *Patton v. Tex. and Pac. Ry. Co.,* 179 U. S. 658.

In the case of *Texas Pacific Railway v. Archibald,* 170 U. S. 665, Mr. Justice White stated the law concisely and intelligibly as follows:

"The elementary rule is that it is the duty of the employer to furnish appliances free from defects discoverable by the exercise of ordinary care, and that the employe has a right to rely upon this duty being performed, and that whilst in entering the employment he assumes the ordinary risks incident to the business, he does not assume the risk arising from the neglect of the employer to perform the positive duty owing to the employe with respect to appliances furnished. An exception to this general rule is well established, which holds that where an employe receives for use a defective appliance, and with knowledge of the defect continues to use it, without notice to the employer, he cannot recover for an injury resulting from the defective appliance thus voluntarily and negligently used. But no reason can be found for, and no authority exists, supporting the contention that an employe, either from his knowledge of the employer's methods of business, or from a failure to use ordinary care to ascertain such methods, subjects himself to the risks of appliances being furnished, which contain defects that might have been discovered by reasonable inspection. The employer on the one hand may rely on the fact that his employe assumes the risks usually incident to the employment. The employe on the other hand, has the right to rest on the assumption that appliances furnished are free from defects discoverable by proper inspection, and is not submitted to the danger of using appliances containing such defects because of his knowledge of the general methods adopted by the employer in

carrying on his business, or because by ordinary care he might have known the methods and inferred therefrom that danger of unsafe appliances might arise. The employe is not compelled to pass judgment on the employer's methods of business, or to conclude as to their adequacy. He has a right to assume that the employer will use reasonable care to make the appliances safe, and to deal with those furnished relying on this fact, subject, of course, to the exception which we have already stated, by which, where an appliance is furnished an employe in which there exists a defect known to him, or plainly observable by him, he cannot recover for an injury caused by such defective appliance, if, with the knowledge above stated, he negligently continues to use it. In assuming the risks of the particular service in which he engages the employe may legally assume that the employer, by whatever rule he elects to conduct his business, will fulfill his legal duty by making reasonable efforts to furnish appliances reasonably safe for the purposes for which they are intended, and whilst this does not justify an employe in using an appliance which he knows to be defective, or relieve him from observing patent defects therein, it obviously does not compel him to know or investigate the employer's modes of business under the penalty, if he does not do so, of taking the risk of the employer's fault in furnishing him unsafe appliances. In *Davidson v. Cornell,* 132 N. Y. 228, the court said: 'It is as a general rule true that a servant entering into employment which is hazardous, assumes the usual risks of the service, and those which are apparent to ordinary observation, and, when he accepts or continues in the service with knowledge of the character of structures from which injury may be apprehended, he also assumes the hazards incident to the situation. Those not obvious, assumed by the employe, are such perils as exist after the master has used due care and precaution to guard the former against danger. And the defective condition of structures or appliances which, by the exercise of reasonable care of the master may be ob-

viated, and from the consequences of which he is relieved from responsibility to the servant by reason of the latter's knowledge of the situation, is such as is apparent to his observation.' "

The foregoing excerpt embraces practically all the law in the case under consideration, and is well supported by the decisions of numerous state courts, and we might safely rest the decision of this case on the law as stated by Justice White.

In the case of the *B. & O. R. R. v. Baugh,* 149 U. S. 387, the opinion of the court was delivered by Mr. Justice Brewer, and he there quoted and approved the language of Mr. Justice Valentine, in *A., T. & S. F. R. R. v. Moon,* 29 Kan. 632, as follows:

"A master assumes the duty toward his servant by exercising reasonable care and diligence to provide the servant with a reasonably safe place at which to work, with reasonably safe machinery, tools and implements to work with, with reasonably safe materials to work upon, and with suitable and competent fellow servants to work with him, and when the master has properly discharged these duties, then at common law, the servant assumes all the risks and hazard incident to or attendant upon the exercise of the particular employment or the performance of the particular work, including those risks and hazards resulting from the possible negligence and carelessness of his fellow servants and co-employes. And at common law whenever the master delegates to any officer, servant, agent or employe, high or low, the performance of any of the duties above mentioned, which really devolve upon the master himself, then such officer, servant, agent or employe, stands in the place of the master and becomes a substitute for the master, a vice principal, and the master is liable for his acts or his negligence to the same extent as though the master himself had performed the acts

or was guilty of the negligence. But at common law where the master himself has performed his duty, the master is not liable to any one of the servants for the acts or negligence of any mere fellow servants or co-employe of such servant, when the fellow servant or co-employe does not sustain this representative relation to the master."

These cases are sufficient to establish the law defining the relations of employer and employe, the duties which the employer owes to the employe, and the test of liability when the employer has been negligent, and the employe is without fault. We must now determine the rule as to what constitutes contributory negligence on the part of the employe. Here again we find the adjudications numerous and conflicting, and without attempting to harmonize or explain them, we shall follow the rule which has met the approval of the supreme court of the United States in numerous well considered cases. In *Kane v. Northern Central Ry. Co.,* 128 U. S. 91-95, that court said:

"It is undoubtedly the law that an employe is guilty of contributory negligence which will defeat his right to recover from injuries sustained in the course of his employment, where such injuries substantially resulted from dangers so obvious and threatening that a reasonably prudent man under similar circumstances would have avoided them if in his power to do so. He will be deemed in such case to have assumed the risks involved in such heedless exposure of himself to danger.  *  *  *  But in determining whether an employe has recklessly exposed himself to peril, or failed to exercise the care for his personal safety that might reasonably be expected, regard must always be had to the exigencies of his position, indeed to all the circumstances of the particular occasion."

It was also held in the case of *District of Columbia v. McElligett,* 117 U. S. 621-633:

"That is was the duty of an employe having knowledge of the dangerous character of the place in which he was working, to exercise due diligence and care in protecting himself from harm, and if he failed to exercise such care, and exposed himself to dangers that were so threatening or obvious as likely to cause injury at any moment, he would, notwithstanding any promises or assurances of the employer to provide precautionary measures, be guilty of such contributory negligence as would defeat his claim for injuries so received, and also that the employer is not liable in any event if the danger apprehended is so imminent or manifest as to prevent a reasonably prudent man from risking it and the employe possessed of such knowledge continues his service. But in all such cases the real question to be determined is whether at the time of the accident the plaintiff was exercising such reasonable care and caution as an ordinary person would exercise under similar circumstances."

In *Washington, &c., Railroad v. McDade,* 135 U. S. 554-570, the court said:

"But if the employe knew of the defect in the machinery from which the injury happened, and yet remained in the service and continued to use the machinery without giving any notice thereof to the employer, he must be deemed to have assumed the risk of all danger reasonably to be apprehended from such use and is entitled to no recovery."

In *Texas and Pacific R. R. v. Archibald,* 170 U. S. 665-673, the court said:

"Where an employe takes reckless risks with full knowledge of the danger, and injuries result, he cannot recover for the reason that he has not exercised due care." (See also *Bunt v. Seiria Butte Gold Mining Co.,* 138 U. S. 483.)

These cases seem to fairly state the law upon the question of contributory negligence on the part of an employe where negligence is alleged on the part of the employer in failing to perform a duty to such an employe. The plaintiff

24—Vol 13

undertook to prove negligence on the part of the company in failing to provide him a safe means of performing his work, and it is claimed that the evidence introduced by him established contributory negligence on his part. If this be true, then clearly he cannot recover. But this leads us to the inquiry as to what the state of the evidence must be to warrant the court in taking the case from the jury and holding as a matter of law that contributory negligence has been shown.

It was observed in the case of *St. L. & S. F. Ry. Co. v. Schumacher,* 152 U. S. 77, that where it plainly appears from the evidence that the plaintiff was guilty of contributory negligence, and there is no evidence of a wilful or intended negligence on the part of the defendant, the court may take the case from the jury. It has been held that: "As a general rule, contributory negligence is a question for the jury, under proper instructions by the court, especially where the facts are in dispute, and the evidence in relation to them is that from which fair minded  men  may draw different inferences." (*Washington, &c., R. R. Co. v. McDade,* 135 U. S. 573.)

In the last cited case, the court approves the rule stated in *Daley v. American Printing Co.,* 150 Mass. 77, in a case very similar to the one at bar. That court said:

"But the ground upon which the case was withdrawn from the jury is not stated. We cannot say as a matter of law that no sufficient evidence was introduced or offered of negligence on the part of the defendant, or of freedom from negligence on the part of the plaintiff. * * * * If the machinery was found to be unsuitable, and if the plaintiff was within the line of his duty in attempting to adjust the belt, we cannot say that he was not entitled to go to the jury on the question of whether he was in the exercise of due care."

In *Kane v. Northern Central Railway Co.,* 128 U.· S. 91, a brakeman brought an action to recover for injuries received while climbing from a freight car which had a broken step. He knew of the dangerous condition of the step prior to the accident, and had called the conductor's attention to it. The trial court held that he was guilty of contributory negligence, and took the case from the jury, and rendered judgment for the defendant railroad company. The supreme court reversed this judgment, and directed the question of contributory negligence submitted to a jury, and said:

"It is undoubtedly the law that an employe is guilty of contributory negligence which will defeat his right to recover for injuries sustained in the course of his employment, where such injuries substantially resulted from dangers so obvious and threatening that a reasonably prudent man under similar circumstances would have avoided them if in his power to do so. He will be deemed in such case to have assumed the risks involved in such heedless exposure of himself to danger.    *    *    *    But in determining whether an employe has recklessly exposed himself to peril, or failed to exercise the care for his personal safety that might reasonably be expected, regard must always be had to the exigencies of his position, indeed, to all the circumstances of the particular occasion."

In the case of *Railroad Company v. Stout,* 17 Wall. 657, the court announced the law to be "that on the trial of a cause, whether the facts be disputed or undisputed, if different minds may honestly draw different conclusions from them, the case must be submitted to the jury." And we think this is the safe and sound rule. As was well said in that case:

"Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they

have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer, these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw ·unanimous conclusions. This average judgment thus given it is the great effort of the law. to obtain. It is assumed that twelve men know more of the common affairs of life than does one man, that they can draw wiser and safer conclusions from admitted facts thus occurring, than can a single judge."

It was held in the case of *Richmond and Danville Railroad Co. v. Powers,* 149 U. S. 43, Mr. Justice Brewer, speaking for the court, that:

"It is well settled that where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this whether the uncertainty arises from a conflict in the testimony, or because the facts being undisputed, fair minded men will honestly draw different conclusions from them."

It was held in *Randall v. Baltimore and Ohio R. R. Co.,* 109 U. S. 478, that it is for the judge to say whether any facts have been established by sufficient evidence from which negligence can be reasonably inferred, and it is for the jury to say whether from these facts when submitted to them, negligence ought to be inferred.

When the facts are such that all reasonable men must draw the same conclusions from them, the case is one of law for the court, and may be taken from the jury. ( *Gardner v. Mich. Cent. R. R. Co.,* 150 U. S. 349.)

It has also been frequently stated thus:

"A case should not be withdrawn from the jury unless the conclusion follows as a matter of law that no recovery can be had upon any view which could properly be taken of

the facts the evidence tends to establish." (*Tex. and Pac. v. Cox,* 145 U. S. 593; *Dunlap v. Northeastern R. R.* 130 U. S. 649; *Kane v. Northern Central Ry.,* 128 U. S. 91; *Jones v. E. Tenn. V. & G. R. R.* 128 U. S. 443.)

There is but one other legal proposition, we think, presented by this case. It is suggested that the relation of fellow servant existed between plaintiff in error and the night boss who had charge of the oil mill at the time the accident occurred to the plaintiff  The question of the relation of fellow servant has no place in this case.  The plaintiff seeks to recover for injuries resulting from the alleged failure of the oil company to provide reasonably safe appliances with which to do his work.  The law makes it the duty of the employer to provide the employe with reasonably safe and suitable appliances with which to do his work, and the employer cannot delegate this duty to a subordinate, or relieve himself from liability by imposing the duty upon another.  And in any case of injury resulting from defective or unsafe appliances, the relations of fellow servant do not and cannot arise.  (*Northern Pac. R. R. Co. v. Peterson,* 175 U. S. 323; *Northern Pacific R. R. Co. v. Herbert,* 116 U. S. 642; *Washington & G. R. R. Co. v. McDade,* 135, U. S. 554; *Patton v. Tex. and Pacific Ry. Co.* 179 U. S. 658; *Hough v. Railway Co.,* 100 U. S. 213; *Wabash Ry. Co. v. McDaniel,* 107 U. S. 454; *B. & O. R. R. Co. v. Baugh,* 149 U. S. 368; *N. P. Ry. Co. v. Daniels,* 152 U. S. 688.)

By a correct application of the rules of law enunciated in the authorities herein cited to the facts, and reasonable inferences in plaintiff's favor, as shown by his evidence, a correct conclusion should be reached.

It seems clear that when the oil company employed the plaintiff, it undertook to provide him a reasonably safe place in which to work, reasonably safe appliances, machinery and tools with which to do his work, and reasonably competent fellow servants to assist in his work. On the other hand, the plaintiff assumed all the dangers and risks incident to his employment, as well as the risks of any enhanced dangers arising from defective appliances of which he had full knowledge, or which was so obvious as to be readily apparent. The duty of the company to provide safe appliances was measured by the hazards reasonably incident to the operation of oil mill machinery, constructed as its mill was, and the risks assumed by the plaintiff were such as could be reasonably expected to result from the operation of such machinery, and its appliances, when properly constructed and properly operated. The company was required to exercise reasonable care and caution in the supplying and maintenance of its appliances furnished employes with which to perform their work, and the employe was required to exercise reasonable care and caution for his own safety, and to avoid injuries to himself. The company was not required to furnish the best or latest patterns, or most modern designs of machinery or appliances, but it was bound to provide such as were reasonably safe and free from dangerous defects, and was required to exercise reasonable care and caution in the selection and in the maintenance of that character of appliances that it did provide and use. If the company, instead of erecting a foot board for use of its employes in oiling and repairing the overhead shafting and pulleys, and in adjusting the belts to the pulleys, elected to provide a ladder for such purpose, it was then its duty to

exercise due care and caution in the selection of such a ladder as would be reasonably safe, and without dangerous defects which might in the exercise of reasonable diligence have been discovered, and the duty remained with the company continuously, so long as the ladder was so used, to see that it was reasonably suitable and satisfactory for such purpose. If the ladder was defective, if it was too weak, if it was not suitable for the purpose for which it was used at the time of the accident, then the company was chargeable with notice of such dangers or defects as shown by the evidence, as a number of the employes at divers times had informed the manager of the company of the conditions as they existed. There was evidence reasonably tending to show that the ladder was weak on one side; that when in use the weight of a person upon it had a tendency to cause it to turn to one side; that in replacing the belt, the operator had to stand near the top of the ladder and lift one end of a large belt and in putting on the belt a considerable pressure was required, amounting, it was estimated, to from one hundred to two hundred pounds. To support the weight of the man and the added weight of the belt, and resist the required pressure to adjust the belt, required a sustaining capacity very largely in excess of that ordinarily required on a ladder. This ladder had been used about the mill for several months, had been used by carpenters and laborers, and had been frequently used for the purpose of putting on the belt the same as when the accident occurred. An attempt had been made to strengthen the weak side of the ladder, and a piece of board had been nailed on, which had caused the side piece to split. It was clearly shown that the proper and suitable mode of construct-

ing such mills was to construct a foot or running board along the shafting with railings, so that employes required to go up to the shafting could walk upon such foot board and reach the shaft, pulleys and belts, and that it was more hazardous to use the ladder for such purposes.   But the plaintiff knew of this mode of performing this work, when he took this particular employment; he had previously worked in other parts of the mill, and knew of the risk and danger of ascending this ladder for the purpose of replacing the belt in question.   With full knowledge of these conditions he took the employment and accepted the risks incident to such work; he assumed such extra hazards as were to be reasonably expected from the use of the ladder in putting on the belt, but he also had a right to assume that the employer had provided a ladder which was strong enough to support his weight, and the additional force necessary to put the belt on the pulley, unless the defect or danger of the ladder breaking was so obvious and imminent as to be apparent or observable.   The employe is not required to inspect machinery furnished him to work with, he is not bound to look for latent defects, nor is he chargeable with notice of defects that he might have discovered by the exercise of reasonable diligence.   He is only chargeable with such defects as are apparent to ordinary observation.   This was expressly decided in the case of *Texas and Pacific Railway v. Archibald,* 170 U. S. 665, and our own court has said in *City of Guthrie v. Swan,* 5 Okla. 779:

"There must be knowledge of the danger, or sufficient reason to apprehend it, to put a reasonable man on his guard, or there can be no contributory negligence.   But even though the person injured had reason to apprehend it, yet it does not necessarily follow that he has been guilty of contributory neg-

ligence. Thus one may voluntarily and unnecessarily expose himself or his property to a known danger without being guilty of contributory negligence as a matter of law; and while so doing he is held to assume all risks of injury which a careful and prudent person would apprehend as likely to flow from his conduct, yet if injured by the negligence of another without any negligence upon his part proximately contributing to the injury, he may recover, and it is usually held a question for the jury whether he was in the exercise of due care to avoid danger."

The company which procured the ladder to be made, and supplied it for the use in the room where the accident occurred, and caused it to be used in the manner that the plaintiff was using it when he was injured, were bound to know that it was suitable for this purpose; they had no right to guess or experiment with it. The duty it owed to its employe required it to exercise reasonable care, skill, caution and judgment. It was required to know or take reasonable precautionary steps to ascertain the kind, character and quality of the timber used in the construction of the ladder so far as it could be ascertained from examination and inspection. It was required to know that the scantlings used for the side pieces were of sufficient capacity to support the weight of the plaintiff and resist the force necessary to be used in replacing the belt. And after the ladder was "spliced" or "patched," as it was termed by the witnesses, it was the duty of the company to see that it was not weakened by the nails or cracks caused by the nails. To fail to use such reasonable care and caution at all times as was necessary to obtain such information, was negligence. On the other hand, if there were defects rendering the ladder unsafe, which were of such a character as to be apparent to ordinary observation, and the plaintiff had

reason to apprehend danger from such defects, then he assumed the hazard incident to such condition, and his own negligence contributed to his injury and thereby prevents a recovery. But he was not required to know the sustaining power of the timbers, the amount of resistence required to meet and overcome the force of putting up and adjusting the belt, or how much weight the ladder was capable of supporting. He had a right to assume that the employer, in performance of its duty, had done all things reasonably necessary to provide him with a safe ladder, and to rely upon such assumption, unless the condition of the ladder itself, and what he had observed in the use of it previously, were such as would lead a reasonably careful person to believe that it was unsafe and dangerous for use in replacing the belt on the overhead pulley. If he did have such knowledge as would cause a reasonably cautious person to refrain from taking the risk under all the circumstances of the case at the time, and not regarding such knowledge he continued using the ladder, then he will not be entitled to recover for any injury resulting from the insufficiency of the ladder for the purpose used. It is not every suspicion or apprehension of danger that will warrant an employe in abandoning his post, and in refusing to perform his labors. Taking the risk of apprehended danger is not necessarily negligence. There must be knowledge of danger or knowledge of a condition which reasonably leads to a belief of danger, and this rule is different from that which controls in case of passengers, travelers or strangers. In this case the mill was running day and night; the plaintiff and one other person were employed in the room where the "linters" and "hullers" were operated; these machines were pro-

pelled by the belt which was in turn driven by the pulley on the overhead shaft, against which it was necessary to support the upper end of the ladder in adjusting the belt. When this belt slipped off the pulley, a portion of the machines in this room were stopped, and the seed being forced into them, they became choked. It was necessary to raise the lids or doors on these machines to prevent more serious consequences. The engineer was in another room; when the belt came off the power continued, and other parts of the machinery were kept in motion; breaking this link destroyed the effectiveness of any of the process. The plaintiff was employed to look after the operation of the machinery in this room; he had one assistant who had not worked long at the business; he complained to the company of the hazard of adjusting the belt while standing on a ladder, and said the ladder did not seem safe. The night manager assured him the ladder was all right, and instructed him to go ahead and further said if it did not suit him, he would get men who would use it. With this assurance he did go on and use the ladder. Does this state of facts, under all the surrounding circumstances, show contributory negligence? Can fair minded men arrive at only one conclusion, and that, that the plaintiff recklessly and heedlessly and without regard for his own safety, used the ladder in question? Or will some fair minded men honestly come to the conclusion that the plaintiff acted in this case as any ordinarily careful and cautious person would be expected to act under all the circumstances? We think there is room for a diversity of honest judgment, and that the plaintiff was entitled to have the question, both of negligence of the defendant and that of contributory negligence, go to the jury. We think the case is one that comes within the rule, where it is error to

withdraw the case from the jury and decide the case as a question of law.

There are some suggestions in the briefs that ought to be referred to, inasmuch as a new trial must be had. It had been suggested that the law as stated in the case of the *City of Guthrie v. Swan*, 5 Okla. 779, is controlling in this case. We do not think so. This case is governed entirely by the law as between employer and employe in such cases, and their reciprocal relations to each other. The Swan case is controlled by the laws governing the duties of municipal corporations to pedestrians. While some of the principles stated in the Swan case are applicable here, the controlling principle is not the same.

The plaintiff has sought in his brief to make the rule apply as stated in *Hough v. Railroad Co.*, 100 U. S. 213. Where it was held "there can be no doubt that, where a master has expressly promised to repair a defect, the servant can recover for an injury caused thereby within such a period of time after the promise as would be reasonable to allow for its performance, as we think, for an injury suffered within any period which would not preclude all reasonable expectation that the promise might be kept." But we do not think him entitled to the benefit of this rule. It is true that he testified that about a week previous to the accident he complained of the dangerous mode of performing the duty of putting on the belt, and that the officer in charge assured him that he would have a foot board put up. But this assurance was clearly revoked and repudiated by the last conversation, had only two or three days before the accident, at which time he again stated to the officer in charge that the ladder seemed unsafe, and was informed that it was sufficient, and if he did not like

it, he would get some one who would use it. In view of this last conversation, we do not think the plaintiff was still permitted to rely upon the previous promise, or to govern his conduct thereby. In order to entitle an employe to the benefit of the rule claimed, the promise to repair or remedy must have been made under such circumstances that the employe relied upon it, and continued his service upon the assurance that it would be done.

Counsel for defendant in error very confidently rely upon the case of *Southern Pac. Co. v. Sealey,* 152 U. S. 145; where Mr. Justice Shiras, speaking for the court, said:

"He knew as much about it and the risk attending its use as the master. The defendant could not be required to provide himself with other machinery or with new appliances, nor to elect between the expense of doing so and the imposition of damages for injuries resulting to servants from the mere use of an older or different pattern. In the absence of defective construction, or of negligence or want of care in the reparation of machinery furnished by him, the master incurs no liability from its use. The general rule is that the servant accepts the service subject to the risks incidental to it, and when the machinery and implements of the employer's business are, at the time, of a certain kind or condition, and the servant knows it, he can make no claim upon the master to furnish other or different safeguards."

In the Sealey case the plaintiff was employed upon a railroad as conductor; he placed his foot in a frog, and was run over by the train and killed; he was familiar with frogs, the various kinds and their dangers, and took his employment assuming all the risks incident to their use. It was shown that there was a later improved pattern of frog that was not subject to these perils. The contention of plaintiff's counsel was that it was negligence on the part of the railroad company to use

these open frogs.  The court cites a number of cases all to the the effect that where the company has adopted an appliance which is suitable and in common use, it will not be charged with negligence for not adopting a later pattern.  But there is nothing in the Sealey case which absolves an employer from exercising reasonable care and caution to supply reasonably safe appliances, and to keep them in a reasonably safe condition.  As said before in this opinion, the oil mill company had elected to make use of a ladder to put up these belts, and the plaintiff took his employment with knowledge of such mode of doing the work, yet the oil mill company was not absolved from providing a reasonably suitable and safe ladder and in the absence of direct knowledge to the contrary, the plaintiff had a right to assume that the company had done its duty, and that the ladder was reasonably suitable and safe for the work which he was required to do.  The rule we have herein stated is, we think, in harmony with the law as expressed in the Sealey case.  Nor is there anything herein in conflict with the law as enunciated in *Chaddick et al v. Lindsay,* 5 Okla. 616.

In conclusion, we are of the opinion that on account of the error of the trial court in withdrawing the case from the jury, that the judgment should be reversed, and cause remanded to the district court with directions to resubmit the issues to a jury, and unless the evidence should be substantially different, that the question of whether the defendant oil mill company exercised a proper care and caution in the selection of the ladder and keeping it in repair, and whether it was defective or reasonably sufficient to support a person while adjusting the belt in question, and whether the company exercised ordinary caution in determining such questions, and

also whether under the circumstances at the time, the plaintiff acted as an ordinarily prudent person would be expected to act should be submitted to the jury under proper instructions of the court.

The judgment is reversed at costs of defendant in error.

Burwell, J., who presided in the court below, not sitting; Gillette, J., absent; all the other Justices concurring.