## SARTAIN v. WALKER et al.

No. 7660—Opinion Filed July 11, 1916.

Rehearing Denied September 26, 1916.

(159 Pac. 1096.)

### 1. Trial—Demurrer to Evidence.

When the evidence offered by the plaintiff is sufficient to make a prima facie case, it is reversible error on the part of the trial court to sustain a demurrer thereto.

### 2. Same.

It is a well-settled rule that a demurrer to the evidence admits all the facts which the evidence tends to prove or of which there is any evidence, however slight, and all inferences which can be logically and reasonably drawn from the evidence.

### 3. Same.

The decision of a case by the court upon a demurrer to the evidence is entirely unlike either the decision of a case by the jury upon the evidence or the decision of a case by the court upon a motion for a new trial; for, where the court sustains a demurrer to the evidence, the court must be able to say that admitting every fact that is proved which is favorable to the plaintiff, and admitting every fact that the jury may fairly and legally infer from the evidence favorable to the plaintiff, still the plaintiff has utterly failed to make out some one or more of the material facts of his case.

### 4. Same—Directed Verdict.

Court may direct verdict where facts undisputed or of such conclusive character that court in sound judicial discretion would be compelled to set aside verdict returned in opposition to it.

### 5. Same—Demurrer to Evidence.

Question is whether there is enough competent evidence to reasonably sustain verdict. All evidence in conflict with evidence against which action is to be taken must be eliminated, leaving solely the evidence favorable to party against whom such action is leveled. Incompetent testimony received over objection should be eliminated.

### 6. Same—Peremptory Instruction.

Peremptory instruction should only be given where all reasonable minds would draw

the same conclusion and where such conclusion would be against material averments of plaintiff's petition. It is error to direct a verdict where there is a controverted question of fact before jury.

### 7. Appeal and Error—Trial—Province of Court—Demurrer to Evidence—Review.

It is the settled rule that a demurrer to the evidence admits every fact which the evidence in the slightest degree tends to prove and all inferences or conclusions that may be reasonably and logically drawn from the evidence. This court will consider as withdrawn all the evidence which is most favorable to the party demurring. If the inference to be drawn from the evidence is a reasonable one, although not a necessary one, the court will not invade the province of the jury by taking from it the right to pass on the facts to be deduced from such inference. A demurrer to the evidence not only admits the truth of the evidence of the demurree, but also all the facts which the evidence in any degree tends to prove, and is a waiver of all the evidence of the demurrant which conflicts with that of his adversary and of inferences from his own evidence.

(Syllabus by Davis, C.)

Error from District Court, Tulsa County; Conn Linn, Judge.

Action by W. P. Sartain against P. G. Walker, Jr., Fred H. Mott, Louis E. Hohman, and L. L. Hutchinson. Judgment in favor of defendants, and plaintiff brings error. Reversed and remanded.

Robert J. Boone and W. J. Crump, for plaintiff in error.

A. A. Hatch, W. D. Abbott, and Frederic A. Peek, for defendants in error.

Opinion by DAVIS, C. The parties will be mentioned here as in the court below. This action was begun in the district court of Tulsa county, Oklahoma, on November 5, 1913, by the plaintiff filing the following petition, omitting caption and mere formal parts:

"The plaintiff, W. P. Sartain, for his cause of action against the above-named defendants, states:

"That on the 2d day of April, 1913, he was the owner in fee of the southeast quarter (S. E. 1-4) of section fourteen (14), township fifteen (15) north, range fifteen (15) east, in Muskogee county, state of Oklahoma; that, being such owner at that time, he entered into a written contract with the said defendant P. G. Walker, Jr., who was acting in his own behalf and as agent for and in behalf of the above-named co-defendants; that by the terms of said contract he was to furnish to the said defendants, or to the said defendant P. G. Walker, Jr., their agent and representative, as aforesaid, a gas and oil lease on said land for the term of five (5) years from the date of said lease, and the said de-fendants were to pay him and did pay the said plaintiff the sum of one hundred ($100.-00) dollars in cash at the time of the execution of said contract, and was to pay him the further sum of nineteen hundred ($1,900.00) dollars on the acceptance of said lease, and was to execute to the said plaintiff a note for the sum of two thousand ($2,000.00) dollars, due in sixty (60) days thereafter, signed by all of said defendants, said parties to have five (5) days from the receipt of abstract and papers at Exchange National Bank of Tulsa, Okla., in which to examine title and approve said lease; a copy of said contract is hereto attached, marked Plaintiff's Exhibit No. 1; the original is held subject to the order of the court and the inspection of the parties; that afterwards, in compliance with said contract, he, together with his wife, executed said lease according to the terms of said contract, and sent the same to the Exchange National Bank at Tulsa, Okla., together with a blank note to be signed by said defendants in the sum of two thousand ($2,000.00) dollars, and thereby complied with the terms of the contract executed and described hereinbefore; a copy of said lease is hereto attached, marked Plaintiff's Exhibit No. 2; the original is held subject to the order of the court and the inspection of the parties.

"Plaintiff further states that he furnished the defendant with an abstract of title showing that he was the owner of said land in fee simple unincumbered, and that he had a right to let and lease the same, as specified in the contract aforesaid.

"Plaintiff states that the said defendants neglected, failed, and refused to accept said lease or to execute the note aforesaid, or to pay the nineteen hundred ($1,900.00) dollars as specified in said agreement, and that they still neglect, fail, and refuse to execute said note, pay said nineteen hundred ($1,900.00) dollars, and accept the lease.

"Wherefore plaintiff is damaged in the sum of thirty-nine hundred ($3,900.00) dollars, for which he prays judgment and for all proper relief."

To this petition the following exhibits were attached, made a part thereof, and asked to be considered therewith:

### Plaintiff's Exhibit 1.

"Haskell, Oklahoma, April 2, 1913.

"This agreement made and entered into this, the 2d day of April, 1913, by and between W. P. Sartain, of Haskell, Okla., party of the first part, and P. G. Walker, of Tulsa, Okla., party of the second part, witnesseth: That for and in consideration of four thousand ($4,000.00) dollars, to be paid by second party to the first party, and hereinafter stipulated, one hundred dollars ($100.00) of which amount has been paid to first party, the receipt of which is hereby acknowledged, and the commencing of a well on the southeast quarter (¼) of the northwest quarter (¼) of section fourteen (14),

township fifteen (15) north, range fifteen (15) east, within ninety (90) days from this date, the first party hereby agrees to execute a regular form of lease to the above-described land and deposit same with abstract of title in the Exchange National Bank of Tulsa, Okla., subject to examination of title by second party. And upon acceptance of title by second party the said Exchange National Bank is to deliver said lease to second party upon the payment of one thousand nine hundred and no/100 dollars ($1,900) to the credit of first party and the execution of a 60-day note to first party for two thousand and no/100 dollars ($2,000), signed by P. G. Walker, Jr., Fred H. Mott, Louis E. Hohman, and L. L. Hutchinson; said second party to have 5 days from the receipt of abstract and papers at Exchange National Bank for examination of title and acceptance of same, and the payment to be made on acceptance of title. And first party further agrees to correct any defects of title, if there be any, within a reasonable time, and to waive the conditions of payment herein agreed to until such defects, if any, are corrected.

> "W. P. Sartain.
> "P. G. Walker, Jr.

"State of Oklahoma, County of Muskogee —ss.:

"I, William E. Combs, a notary public in and for the above-said county and state, hereby certify that the above and foregoing agreement is a true and correct copy of a certain agreement made and entered into on the date as shown by above copy, by the parties whose names are subscribed thereto.

"In witness whereof I have hereunto set my hand and affixed my seal as such notary public this 3d day of April, 1913.

"[Signed] Wm. E. Combs, Notary Public.

"My commission expires December 29, 1913."

### Plaintiff's Exhibit 2.
#### "Haskell, Oklahoma.

"Agreement made and entered into the 2d day of April, A. D. 1913, by and between William P. Sartain and Maggie E. Sartain (his wife), of Haskell, Okla., parties of the first part, lessors, and P. G. Walker, Jr., of Tulsa, Okla., party of the second part, lessee, witnesseth: The said parties of the first part, for and in consideration of the sum of one dollar in hand well and truly paid by the said party of the second part, and other valuable consideration, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the party of the second part to be paid, kept, and performed, have granted, demised, leased, and let, and by these presents do grant, demise, lease, and let, unto the party of the second part his successors or assigns, for the sole and only purpose of mining and operating for oil and gas, laying pipe lines, building tanks, power stations, and structures thereon to care for said products, all that certain tract of land situate in Mus-kogee county, state of Oklahoma, described as follows, to wit: The southeast quarter (S. E. ¼) of northwest quarter (N. W. ¼) of section fourteen (14), township fifteen, (15) north, range fifteen (15) east—said to contain 40 acres, more or less, as per the United States government survey (section 14, township 15 north, range 15 east, containing 40 acres, more or less).

"In consideration of the premises the party of the second part covenants and agrees:

"First. To deliver to the credit of parties of the first part, heirs and assigns, free of cost in the pipe line to which wells are connected, the equal one-eighth part of all oil and gas produced and saved from the leased premises.

"Second. To pay parties of the first part one-eighth part of the gas from any well where gas only is produced in paying quantities and marketed off the premises.

"Third. To locate all wells so as to interfere as little as possible with growing crops, and to pay a reasonable amount for any damage to such crops caused by the operation of this lease.

"Fourth. To start a well on said premises within 90 days from date hereof or forfeit all rights in and under this agreement.

"Party of the second part agrees to offset all producing wells.

"It is agreed the completion of such well shall be and operate as a full liquidation of all rents under this provision during the remainder of the term of this lease. All payments falling due under this agreement may be made direct to William P. Sartain or deposited to his credit in International Bank of Haskell, Okla.

"The party of the second part shall have the right to discharge any incumbrance on said premises, and shall have a lien thereon for the amount so paid, together with all costs and expenses incurred; also the right to use gas, oil, and water from or on said premises for the purpose of operating same; also the right to remove at any time all machinery and fixtures placed on said premises. No well shall be drilled nearer than 200 feet to any building now on said premises unless by mutual consent of both parties.

"Parties of the first part shall have the privilege of free gas for domestic purposes in one house on said premises; care being taken not to waste.

"It is agreed that this lease shall remain in force for the term of five years from date hereof, or as long thereafter as oil or gas is produced in paying quantities from said premises by said lessee, his successors or assigns, and, further, upon the payment of one dollar, at any time, by the lessee, his successor or assigns to the lessors, their heirs or assigns, this agreement may be surrendered for cancellation, by paying all rentals due at

the time, and, if the lease has been recorded, to execute a release of and deliver the same to lessor, their heirs or assigns, after which all payments and liabilities thereafter to accrue shall cease and determine.

"All covenants and agreements herein set forth between the parties hereto shall extend to their successors, heirs, executors, administrators and assigns.

"Signatures:

"[Signed] William P. Sartain.
"Maggie E. Sartain.

"State of Oklahoma, County of Muskogee —ss.:

"Before me, a notary public in and for said county and state, on this 2d day of June, 1913, personally appeared W. P. Sartain and Maggie E. Sartain, to me known to be the identical persons who executed the within and foregoing instrument, and acknowledged to me that they executed the same as their free and voluntary act and deed for the uses and purposes therein set forth.

"[Seal]

"[Signed] W. E. Combs, Notary Public.

"My commission expires December 29, 1913."

To this petition defendants filed the following demurrer:

"Come now the defendants P. G. Walker, Jr., and L. L. Hutchinson and demur to the petition of the plaintiff herein filed for that said petition does not state facts sufficient to constitute a cause of action against these defendants and in favor of the plaintiff.

"[Signed] A. A. Hatch,
"Attorney for Defendants."

The demurrer was duly presented to the court and heard and considered and overruled by the trial court on March 24, 1914, and on April 20, 1914, there was filed by the defendants the following answer:

"I. The defendants P. G. Walker, L. L. Hutchinson, and A. A. Hatch, and the defendants Louis E. Hohman and Fred H. Mott, by their attorney, W. D. Abbott, for answer to the petition of the plaintiff, W. P. Sartain, hereinbefore filed, state that they deny each, every, all, and singular the allegations in said petition contained, except such as are hereinafter expressly admitted, and deny that they are indebted to the plaintiff in the sum of thirty-nine hundred dollars ($3,900.00), or in any other sum. The defendants, further answering, state that they admit the execution of the agreement dated April 2, 1913, a copy of which is attached to the petition by the defendant Walker, as the agent of and for and on behalf of himself and all of the defendants, and admit that defendants agreed to pay for an oil and gas mining lease covering the land described in the petition said sum of one hundred dollars ($100.00), which was paid as in the petition alleged, and in addition thereto agreed to pay the plaintiff the said sum of nineteen hundred dollars ($1,900.00) and to execute a note for two thousand dollars ($2,000.00) for the balance of the agreed purchase price, said sum of nineteen hundred dollars ($1,900.00) to be paid and said note for two thousand dollars ($2,000.00) to be executed and delivered on approval and acceptance of said lease and the title thereto by the defendants. The defendants further state that at the same time and place, and as a part and parcel of the same transaction, and as part of the consideration for the execution of said contract, the defendants and the plaintiff caused to be drafted and written the oil and gas mining lease to be furnished defendants by plaintiff under the contract aforesaid, and that the same, both in form and substance, was by the parties hereto agreed upon and stipulated to be the oil and gas mining lease which should be furnished by plaintiff to the defendants. And at said time and place, and upon the execution of said contract by plaintiff, Sartain, and defendant Walker, the plaintiff, Sartain, duly executed and acknowledged said lease, which, together with the copy of the said agreement, was left in the possession of one——Hayes, an officer of the——Bank of Haskell, Okla., by the plaintiff and defendants under an agreement on the part of all parties hereto that the said lease should be duly executed and acknowledged by Maggie E. Sartain, the wife of the plaintiff, and that thereupon the said Hayes should forward to the Exchange National Bank at Tulsa, Okla., the said lease, together with an abstract of title to the land, for examination and acceptance by the defendants.

"The defendants further state that the written agreement aforesaid provided that the abstract of title to the oil and gas mining lease above mentioned should be subject to examination by the defendants, and the entire transaction should be subject to the acceptance of the title to the said land and the said lease by the said defendants. It was therein further provided that the defendants should have five days from the receipt of the abstract and the lease by the said Exchange National Bank in which to examine the title and to accept the same, and that payment for the said lease should not be made until the said title was accepted. It is further provided in the said contract that the plaintiff should correct any defects in the title, if any there should be, within a reasonable time, and would not require payment of the sum therein specified until such defects should be corrected.

"Defendants, further answering, state that they admit that thereafter the plaintiff caused to be forwarded to the said Exchange National Bank an oil and gas mining lease, a copy of which is attached to the plaintiff's petition as Exhibit No. 2, but state that the said oil and gas mining lease was not the oil and gas mining lease prepared and agreed upon at the time the contract was executed,

and was not the lease which was signed and left in the possession of the said Hayes as above stated, but that after the same had been delvered to the said Hayes for the purposes above specified the said oil and gas mining lease was by the plaintiff changed and altered in a material respect and without the knowledge or consent of the defendants, in this, to-wit: The last sentence of the fourth paragraph therein was inserted and interlined as follows: 'The party of the second part agrees to offset all producing wells.'

"The defendants, further answering, state that at the time said lease was prepared and executed by the plaintiff and left with the said Hayes by the parties hereto for the purposes aforesaid, the clause above quoted was not embraced therein, and it was expressly agreed by and between the plaintiff and the defendants as a material part of the consideration for said transaction that the said clause should not be contained in the lease aforesaid, and that these defendants would not have entered into the contract aforesaid had they known said lease would contain said clause. The defendants state that by reason of the alteration of the said lease by the addition of said clause the plaintiff breached the said contract, and on account of which the defendants refused to accept the said lease, and refused to pay the additional sum of nineteen hundred dollars ($1,900.00), and refused to make, execute, and deliver the promissory note representing the balance of the consideration, and the defendants state that the plaintiff failed and refused, and still fails and refuses, to tender or deliver the lease agreed upon by the parties.

"Wherefore defendants pray judgment and for their costs herein expended.

"II. For a second and further defense these defendants incorporate the matters and things heretofore alleged in their first defense as though fully set out herein, and state that within the time limited within which the abstract should be examined and the title accepted as provided in said written contract these defendants caused the said abstract and title to be examined by their attorney, and there was found to be a prior, outstanding unreleased departmental oil and gas mining lease covering the land aforesaid, and. thereupon the defendants refused to accept the said lease and said title, and so notified the plaintiff, who expressly refused to procure a release of the said oil and gas mining lease, and declared the said sum of one hundred dollars ($100.00) heretofore paid him by the defendants as a part of the purchase price to be forfeited, and thereby rescinded the said contract and agreement.

"Wherefore defendants pray judgment and for their costs herein expended.

"III. The defendants for their further answer and cross-petition incorporate herein all matters and things alleged in their first and second defenses as above stated, as though fully set out herein, and state that by reason of defaults on the part of the plaintiff as set out in said first and second defenses the plaintiff became bound to pay and return to these defendants the said sum of $100 paid him by them as above set forth; that the plaintiff has failed and refused to pay or return said sum to these defendants or any part thereof, and there is now due and owing to these defendants from the plaintiff the said sum of one hundred dollars ($100.00), together with interest thereon at the legal rate since the date of said written agreement, to wit, April 2, 1913.

"Wherefore the defendants pray judgment against the plaintiff in the sum of one hundred dollars ($100.00) and for their costs herein expended."

To this answer the plaintiff filed the following reply:

"Comes the plaintiff, W. P. Sartain, by his attorneys, and for reply to first paragraph to the answer of the defendants denies each and every material allegation therein set forth.

"Second, And for reply to the second paragraph of the defendants' answer he also denies each and every material allegation therein set forth.

"Third, And for answer to the third paragraph and cross-petition set forth in defendants' answer he denies each and every material allegation therein set forth.

"Wherefore he prays judgment and for all proper relief."

Mr. W. J. Crump, on behalf of the plaintiff, made the following opening statement in the cause to the jury selected, impaneled, and sworn to try the issues joined in the case:

"May it please the court and gentlemen of the jury:

"As has already been stated to you, the plaintiff brought this suit against the defendants Mr. Walker and his codefendants for a breach of a contract regarding an oil and gas mining lease.

"I will state to you now that the contract which was entered into by the plaintiff was not signed by each of these defendants. That contract was signed by the defendant Walker alone, but the plaintiff alleges in his petition the contract was made by Walker with the plaintiff for the use and benefit of the defendant Walker and his codefendants that are sued in this case with him, and there will be no controversy, I will state to you, about that proposition. Each of the defendants in the answer filed by them admit that that is true; that this contract was executed by him for the use and benefit of themselves; that was understood at the time it was entered into, but it was made for convenience, or some reason, to the defendant Walker, by the plaintiff, Sartain. There won't be any controversy about the contract that was entered

into, or who it binds, for the reason that the defendants admit in their answer that Mr. Walker for himself and his co-defendants did enter into the contract for the breach of which the plaintiff has sued on in this case.

"The proof on the part of the plaintiff will be: There were a number of issues that might have been in this case that are out of the way by reason of the answer filed by each of the defendants in the case. The defendants admit the execution of the contract, and they do not claim that they carried out the contract; they allege certain reasons why they did not do it.

"The proof on the part of the plaintiff will be, however, that the plaintiff, at the time of the execution of this contract, was the owner in fee simple of the land in controversy; that he furnished an abstract of title. That, however, is not denied in the answer, but those are the facts, that he did furnish the abstract of title, and that the defendants refused to take the lease in keeping with the contract made by the plaintiff to the defendant Walker for himself and his codefendants. In fact, it is not denied by the answer; perhaps there will be no proof of it.

"It is alleged in the petition, and not denied in the answer, or, if it is, it is by way of a general denial—anyway, it will not be seriously contended, I take it—that the defendants were to pay the plaintiff $4,000 for an oil and gas mining lease on a piece of land, an 80 acres which is down here in Muskogee county not very far. I think, from Haskell. I don't know just where it is. Anyhow, it is down in that country somewhere. They agreed to pay $4,000 for this lease. At or about the time of the execution of this contract regarding the lease, the defendant Walker, either Mr. Walker or the codefendant, Mott, paid the plaintiff $100 on contract. The contract provided—there will be no dispute about that, I take it—that the defendants were to pay on the approval of the title and the delivery of the lease an additional $1,900, making $2,000 in money which was to be paid. The defendants then were to execute a note for $2,000 due, I believe, in 60 days after date; anyhow, no very great while thereafter. The defendants do not claim that they paid the other $1,900 or that they executed the note for the $2,000.

"The proof will be on the part of the plaintiff, that after he had made this contract with the defendant Walker for himself and the other defendants that he could have sold this lease to other parties for the same amount that he sold it to these defendants. After they refused to take the lease, however, and after he was advised of the fact or learned that they had refused to take the lease and would not take it, in keeping with their contract, then he was never at any time after that able to sell it for as much as the defendants had agreed to pay for it and as he could then and after that have sold it to other parties. To be perfectly frank with you, however, he did sell the lease finally on the land, after the defendants refused to take it, for $2,000, and, while we sue for $3,900, I will state to you we shall expect at the hands of this jury, if the proof warrants it, will be a verdict for $1,900, and 6 per cent. interest from the date of the refusal of the defendants to comply with the contracts they entered into.

"If, after you have heard all the testimony and the instructions of the court, we are entitled to that under the law and under the evidence, we shall expect a verdict; if you do not think so conscientiously, we do not want it."

And Mr. A. A. Hatch, on behalf of the defendants, made the following opening statement to the jury:

"May it please the court and gentlemen of the jury:

"As Mr. Crump has told you, this is a suit for damages for a claim that the plaintiff makes for a breach of a contract. The defendants, as the proof will show, deal in oil properties and are oil producers. They buy leases and develop them.

"Mr. Sartain, the plaintiff, is the owner of this land and a hotel keeper at Haskell; and some time in April, 1913, the plaintiff and defendants entered into a contract whereby the plaintiff agreed to lease the land described in this petition to the defendants for oil and gas mining purposes. That contract contained certain provisions. One provision was that he should furnish them an abstract showing a clear title to the land. At the time they entered into this contract, and as a part of the contract, they drew the lease that the plaintiff was to furnish the defendants, and at the same time the contract was signed the lease was signed by Mr. Sartain. The lease then, after it having been signed, together with the contract, was left with a Mr. Hays, the cashier of a bank at Haskell, for the purpose of having the lease signed by Mrs. Sartain and to be forwarded, with the abstract of title and the contract, to the Exchange National Bank at this place.

"The proof will show that at the time this contract was signed by Mr. Sartain and Mr. Walker, and the lease that was drawn and signed, it was agreed that that should be the lease that he was to give; that that particular lease contained all the provisions that were to be in the lease that the defendants were to take from the plaintiff.

"The proof will show that after the lease had been signed by Mr. Sartain, and this contract and the lease left with Mr. Hays for the purpose of having Mrs. Sartain sign the lease and then being sent to the Exchange National Bank, the lease was changed; that a clause was put in the lease which Mr. Walker and Mr. Mott told Mr. Sartain at the time the lease was being prepared that they would not accept the lease with that clause in it. The clause that was inserted in the lease after Mr. Sartain had signed it and it had been left with Mr. Hays was this: 'The

party of the second part agrees to offset all producing wells.' That was the clause that was put in the lease after it had been agreed between the parties as to what the lease should be and after it had been distinctly understood that the defendants would not accept the lease with that clause in it.

"I might say the proof will show that after the lease had been signed, after the contract and lease had been signed and left with Mr. Hays, as I stated, for the purpose of Mrs. Sartain's signature, Mr. Mott and Mr. Walker left Haskell and came back home. After they had left, this clause, as I stated, was inserted in the lease.

"The next day or two—I don't know, but just a day or two after this—the lease, together with the abstract and the contract, was sent to the Exchange National Bank for the defendants to examine the abstract and pass upon the title. The defendants were informed that the lease was at the Exchange National Bank, and the defendants then informed me, as their attorney, to get the abstract, as was the custom, and examine the title. I went to the bank, and the bank delivered me the abstract. It was examined, and in the examination of the title it was found that the title was not perfect; that there was an outstanding lease against the land. That was reported to Mr. Sartain, and the abstract returned to the bank, and the title disapproved. Mr. Sartain, after he had been informed that there was an outstanding lease, that the title was not perfect, not acceptable, he refused at the time to perfect the title, and I will say here that his contract provided that he should perfect the title. But as that may be, about two months afterwards, or perhaps a little over, he did inform the defendants that he had perfected the title, that he had got a release of this old lease, and again returned the abstract to the Exchange National Bank. That was something over two months after the contract had been made, and the contract at the time it was made was to be closed within five days if the title was perfect.

"After that, then, when the parties went to investigate the matter further, they found that the lease that he offered was not the lease that had been agreed upon that the plaintiff had agreed to furnish the defendants, and for that reason also the lease was rejected as not complying with the contract that was entered into on the 2d day of April, 1913.

"Then it will be shown in evidence that the plaintiff did not comply with the terms of his contract, for that in the first place he did not furnish a clear title within a reasonable time as his contract provided; second, that he did not furnish or tender the lease that was agreed upon; that the lease that he did tender was not the lease, but a different lease than was agreed upon.

"There is one other question also in the case. There was $100 paid to the plaintiff by the defendants at the time the lease and contract was made at Haskell, as I have described. We contend we are entitled to the recovery of that $100 that was paid."

The evidence offered to the court and jury on the part of the plaintiff was and is substantially as follows:

It was agreed between the parties that the southeast quarter of the northwest quarter of section 14, in township 15 north, range 15 east, containing 40 acres, was allotted and patent issued to Jack Hawkins. The plaintiff offered in evidence the deeds from Jack Hawkins and wife to George F. Bucher covering the southeast quarter of the northwest quarter of section 14, township 15 north, range 15 east, and also offered in evidence deed from George F. Bucher and wife to W. P. Sartain, the plaintiff, conveying the same lands. All of these instruments were duly recorded in the office of the register of deeds for Muskogee county (the county in which the land was located).

William P. Sartain, the plaintiff herein, testified as follows:

"My name is W. P. Sartain, and I am the plaintiff in this case, and reside at Haskell, Okla. I know all of the defendants except Mr. Hohman. After the execution of the contract, a copy of which is set out in my petition herein, it was sent to the Exchange National Bank in Tulsa by the International Bank of Haskell. Mr. T. O. Hays is an officer in the International Bank at Haskell, and the contract and lease (copies of which are attached to my petition) and a note for $2,000, together with the abstract of title and a draft for $1,900, were sent by the International Bank to the Exchange National Bank in keeping with my contract with the defendants. The lease, contract, and papers were all sent to the Exchange National Bank on the 7th of April, 1913, and were returned to the International Bank on the 14th of April. About two weeks after the papers were returned to the International Bank at Haskell I received a letter from Mr. Walker returning the old departmental lease. This letter was received, I think, the next day after I received the papers from the International Bank at Haskell. At the time the papers were returned, and in fact at no time until after I had received the letter from Mr. Walker, was there any reason given by the defendants or the Exchange National Bank as to why they had not carried out their contract. Mr. Mott paid me $100 on the contract at the time of its execution, which was on April 1st or 2d. After I made the contract with Mr. Walker for himself and his codefendants, I had an opportunity to lease this 40 acres of land to other persons for the amount the defendants were to pay, and in fact I could have made a better lease to Ern Moss. After the defendants failed to keep their contract and the papers were returned to me, and I ascertained definitely that they

would not carry out their contract I then sold a lease on the land for $2,000, being $1,900 less than the total amount I was to obtain from the defendants. At the time that the contract, a copy of which is attached to my petition, was drawn, Mr. Mott and Mr. Walker, two of the defendants, together with myself and Mr. T. O. Hays and W. M. Combs, were present at the International Bank at Haskell on about the 2d day of April, 1913. Mr. Mott and Mr. Walker and myself had gone into the bank to get Mr. Hays to typewrite the contract and lease for us. The contract, which is set up in the petition, was drawn by defendant Walker, and we signed same. Mr. Hays was writing out on the typewriter the lease which was to be signed by myself and wife. Mr. Mott, one of the defendants, dictated to him what should be put therein, except one clause. When we got down to that part of the lease with reference to drilling, I insisted that a clause be inserted reading as follows: 'Party of the second part agrees to offset all producing wells.' Mr. Walker remarked that the law would make us offset all producing wells. I then replied to him that if the law provided for it it would not hurt to go into the lease. They then made no further objections, and that was all that was said about it. Shortly thereafter, and before the lease was completed, they left the bank in a hurry to catch the noon train for Tulsa, as it was nearly train time when they left."

During the examination of the witness W. P. Sartain herein the following proceedings were had:

"Mr. Hatch: I now offer in evidence Defendants' Exhibit 1.

"Mr. Crump: We object, for the reason it is not proper at this time; it is not proper cross-examination to introduce that; he can have it identified and marked; then it may be offered when he comes to prove his side of the case.

"The Court: It might not strictly be proper at this time, but then it will expedite matters; then the other parties can go into detail when they inquire about the lease in detail. Go ahead; you can introduce it.

"Mr. Crump: Exception."

And thereupon Mr. Hatch read Defendants' Exhibit 1 to the jury, which is identical with Plaintiff's Exhibit 1, supra.

Again resuming with the witness Sartain on cross-examination, the witness admitted writing Defendants' Exhibits 2 and 3. Thereupon the following proceedings were had:

"Mr. Abbott: I believe that is all. We offer in evidence Defendants' Exhibit 2 and 3.

"Mr. Crump: No objection to either of them, if the court please."

Which said Defendants' Exhibits 2 and 3, so offered and received in evidence, are in the words and figures as follows, to wit:

Defendants' Exhibit 2.

"Case No. 3792. District Court.
"Haskell, Okla., 6—6, 1913.

"Mr. P. G. Walker, Jr., Tulsa, Okla.—Sir: Your letter was received yesterday. Was surprised when you said you had returned the papers and lease.

"Now you made the contract with me in good faith yourself and Mr. Mott, and as soon as I signed the contract you seemed to be satisfied. As to the lease being changed after you left that is a mistake, for Mr. Mott dictated the lease and Mr. Hays wrote it, with the exception of the offset clause where Mr. Mott and yourself said that the statutes provided for that, and if you could show me that in the statute it would do no harm in the lease.

"I have done just what I agreed to do in regard to clearing the title, which cost me about $100.00 with abstract down to date.

"You caused me to turn down a drilling contract which was a good proposition because I had promised to make you a proposition, and did make you one which yourself and Mr. Mott accepted. I made my word good and I thought I was dealing with men that would do what they said they would do.

"Yours respectfully,     W. P. Sartain."

Defendants' Exhibit 3.

"Case No. 3792. District Court.
"J. W. Brady.    Ben C. Taylor, Notary Public.
"Brady & Taylor, Lawyers.
"Haskell, Oklahoma, June 2, 1913.

"Messrs. P. G. Walker and Fred H. Mott, Tulsa, Okla.—Gentlemen:    In compliance with the agreement made between yourselves and W. P. Sartain, of this place, on the 2d day of April, 1913, relative lease on the southeast quarter of the northwest quarter of section 14—15—15, we are today forwarding through the International Bank of Haskell to the Exchange National Bank of Tulsa complete abstract of land, together  with lease properly acknowledged, with instructions to deliver the same to you upon the condition of your performance of the agreement made at that time.

"We have experienced some difficulty in securing release of the old departmental lease on the land, which has occasioned some delay, but have finally gotten everything straightened out and hope the same will be satisfactory with you.

"Please call at the bank at once and attend to this matter, as the bank has instructions to hold same for five days.

"Yours very truly,.     William P. Sartain."

"The lease, which is set out as Defendants' Exhibit 1, was signed by me partially in two places. At first I started to write my name W. P. Sartain, but, noticing that it was writ-

ten William P. Sartain in the body of the instrument, I erased the W. P. Sartain, and wrote it in full, William P. Sartain. The defendant Walker knew that this departmental lease was on this land at the time he made the agreement with me at Haskell. We had before us at that time a certified copy of the old departmental lease which was examined by both Mr. Walker and Mr. Mott. Mr. Walker told me that he had bought the lease from Mr. Kemp in some way, I don't know how, whether it was a division in the drilling contract, or how, but anyhow he was to have that lease assigned to him. After I ascertained that the defendants desired to get a release of this old departmental lease, I obtained a release signed by Mr. F. C. Hays, as secretary of the Coody Oil Company, which is a release of that old departmental lease, and is same one that is objected to by the defendants. There were no other objections made by them as to the title. The defendants never at any time before or soon after their refusal to comply with the terms of their contract made any objections to the offset provisions of the lease."

The witness examines Exhibit D and identifies it as being the same instrument which he and the defendants Walker and Mott had before them at the time of the transactions hereinbefore stated, that is, the certified copy of the old departmental lease, which was thereupon offered and received in evidence as Plaintiff's Exhibit D. Plaintiff's Exhibit C was just prior thereto offered and received in evidence:

Plaintiff's Exhibit C.

"Case No. 3792.   District Court.

"Release.

"The undersigned Coody Oil Company, lessee in a certain oil and gas mining lease executed by Jack Hawkins and Mollie Hawkins, lessors, in favor of the undersigned lessee, dated 13th day of July, 1907, hereby release, relinquish, and surrender all right, title, and interest in and to the foregoing lease on the following described land, to wit: The southeast quarter (¼) of the northwest quarter (¼) of section 14, township 15 north, range 15 east, of the Indian meridian, containing 40 acres, more or less—said land being located in the county of Muskogee and state of Oklahoma.

"Signed and sealed this 22d day of May, A. D. 1913.

"(Seal.) Coody Oil Company,
"By F. C. Hays, Secretary.

"Acknowledgment of Corporation.

"State of Oklahoma, County of Tulsa—ss.:

"Before me, the undersigned, a notary public in and for said county and state, on this 22d day of May, 1913, personally appeared F. C. Hays, to me known to be the identical person who subscribed the name of the maker thereof to the foregoing instrument as its secretary, and acknowledged to me that he executed the same as his free and voluntary act and deed, and as the free and voluntary act and deed of such corporation, for the uses and purposes therein set forth.

"(Seal.)    John Schmitz, Notary Public.

"My commission expires January 26, 1915."

Indorsements:

"Compared indexed 72949 release of oil and gas lease from —— to ——.

"State of Oklahoma, County of Muskogee.

"I hereby certify that this instrument was filed for record in my office on the 24th day of May, 1913, at 11 o'clock and —— minute a. m., and is duly recorded in Book 243 at page 393. C. H. Eberle, Register of Deeds. By J. W. Maloney, Deputy. (Seal.)"

Plaintiff's Exhibit D is the departmental lease mentioned in Plaintiff's Exhibit C, and in the evidence offered on behalf of plaintiff.

"There was never any development for oil and gas under the departmental lease which is Plaintiff's Exhibit D, nor did the lessee or any one for him under that lease undertake to drill a well or do anything at all toward the development of the property, nor did the company take charge of the property or go into possession of it in any way, and Mr. Walker knew at the time that he took this lease from me that there had been no development on the land under this departmental lease. Mr. Kemp had some connection with the Coody Oil Company, I do not know what, but personally he had no departmental lease on that land. At the time of the execution of the contract in question Mr. Walker and myself discussed this departmental lease with reference to whether it was a valid contract or void, and Mr. Walker said that he did not think it was of any value; that it was null and void from the fact that the Coody Oil Company had never developed the land according to the terms of the lease. After I received the information that the defendants objected to taking this lease because of that old departmental lease being of record, I took up the matter with Mr. Kemp in an endeavor to procure the release which has been offered as Plaintiff's Exhibit C. At first Mr. Kemp was out of the state, and I therefore had to wait a while in order to get the release. I understood that his wife had died, and that he was away on that account, and for that reason it took more time to get this release canceled of record than it would have otherwise. It was executed on the 22d day of May, 1913, and I sent it to the Exchange National Bank, together with all the papers, on the 2d day of June, 1913; the delay being occasioned by the fact that my abstract had to be brought down to date after the release was sent to me at Haskell."

Thereupon the plaintiff produced and caused to be sworn W. E. Combs, who testified as follows:

"My name is W. E. Combs, and I live at

Haskell, Okla. I am the cashier of the International Bank, and was acting as such cashier on the 2d day of April, 1913. I was present at the time the contract which is attached to plaintiff's petition was executed. I believe that Mr. Walker wrote the contract. I don't know who dictated it, but do know Mr. Walker wrote the contract himself. I was present at time the lease from Sartain to Walker was being prepared. It was being written by Mr. Hays. The lease was dictated by Mr. Mott and Mr. Sartain. I heard Mr. Mott and Mr. Sartain talking about this provision that was in the lease, 'Party of the second part agrees to offset all producing wells'. I heard Mr. Sartain say that he would like to have that in the lease, and Mr. Walker said it would not be necessary to put that in, that the statutes provided that all offset wells should be drilled, and Mr. Sartain replied that, if the statutes said that, it wouldn't hurt to put it in there. Mr. Walker and Mr. Mott left to catch a train which was due at that time. When Mr. Sartain said that if the law provided that they should drill offset wells it would not hurt to put it in there, and that he wanted it in, neither Mr. Walker nor Mr. Mott said anything more than that such provision was unnecessary. I was present when Mr. Sartain signed the lease. He did not sign it at the time it was finished, I think, but signed it the afternoon of the same day. Sartain's name was written in the body of the lease as William P. Sartain, and he had started to sign the lease as W. P. Sartain, and changed it to comply with the way his name was written in the lease. The change was made and the lease was signed all at the same time. The contract which was signed by Sartain and the defendant Walker, this lease, and the abstract of title and a note for $2,000, were sent by me, as cashier of the International Bank of Haskell, to the Exchange National Bank of Tulsa on the 7th day of April, 1913; that is, this is the date I sent them out the first time. The papers were returned to us by the Exchange National Bank, except the original contract, but we had a copy of that in our files. The only reason given by the bank for returning it was their notation 'Refused.' I again sent the papers to the Exchange National Bank, after having the abstract brought down to date again, together with a release of the old departmental lease. I believe this was sent out about June 2, 1913. The papers were returned to me about the 8th or 9th of June, I believe."

Whereupon the plaintiff called F. C. Hays as a witness in his behalf, who testified as follows:

"My name is F. C. Hays. I am secretary of the Coody Oil Company, and as such secretary I am the custodian of the minute book and by-laws of the corporation. I have in my hand the minute book and by-laws of the Coody Oil Company, and at the request of counsel here read section 3 of article 8 and section 6 of article 9:

"Section 3 of article 8: 'He may sign as president, vice president, or president pro tempore all certificates of stock, all orders on the treasurer, all bonds, notes, indentures, and leases, and other instruments of writing. The president is authorized to give or receive, make or take, buy or sell leases for gas or other mineral substances. The vice president, president pro tempore, and secretary and treasurer shall have the same power and authority during the time the president, vice president, or president pro tempore is present or during his or their absence.'

"Section 6 of article 9: 'The secretary, either in the presence or during the absence of the other executive officers, is authoriezd and empowered to give or receive, make or take, buy or sell leases for gas or other mineral substances.' "

Thereupon the plaintiff, to further maintain the issues on his behalf, produced and caused to be sworn T. O. Hays, who testified as follows:

"My name is T. O. Hays. I reside at Haskell, Okla. I am president of the International Bank. I prepared the lease which is known as Defendants' Exhibit 1. This lease was dictated to me by Mr. Mott, who sat by my side while I was writing on the typewriter. He dictated most all the terms and clauses that went into it except one clause reading as follows: 'Party of the second part agrees to offset all producing wells.' As to this clause being in the lease, it occurred in this way: Mr. Walker and Mr. Sartain were at a little table drafting a contract under which this lease was to be delivered or accepted, and Mr. Mott and myself were sitting at the typewriter, he being by my side, and we were drawing the lease. The question came up when we got down about midway of the lease as to the offset wells. I turned to Mr. Mott and spoke to him about it, and Mr. Mott and Mr. Walker were talking about it, as well as Mr. Sartain. While they were sitting over there they had not finished their contract for the delivery of the lease or acceptance. Mr. Walker said that the law provided for the offset wells, and, as I remember, Mr. Sartain wanted it in the lease. He said, 'If the law provides for the offset wells, it won't hurt the lease to put it in there.' I was merely drafting the lease according to the ideas of both sides. That was my interest in the lease. I had nothing whatever at stake. They just came in and requested me to draw the lease for them. After Mr. Sartain said that, if the law provided for offset wells it wouldn't do any harm to put it in, Mr. Walker or Mr. Mott made no further objections. Mr. Walker said the law provided for the offset wells. Mr. Walker signed his contract, and he and Mr. Mott walked to the front of the bank and said they had to catch their train, which came through Haskell at that time about 12 o'clock. At that time I had not finished the lease on the typewriter, but did finish it after they left. The provision in the lease about the offset

wells was put in before the lease was finished and came in regular rotation on the form. I finished the lease up in keeping with the agreement the defendants and Mr. Sartain had, as they had stated it to me, at least, as I understood it."

Thereupon the plaintiff rested his case.

The defendants then demurred to the evidence of the plaintiff for the following reasons:

"(1) That the same is not sufficient to warrant a judgment in plaintiff's favor under the issues defined by the pleadings.

"(2) The proof fails to show complete performance of the things required to be performed by the plaintiff under the terms of his contract.

"(3) Because, it being shown there never was any agreement reached as to the offset clause, performance or tender of performance could not have been made, and it is impossible to be made.

"(4) Because this suit alleges a full performance of the terms of the contract, and seeks to recover the full contract price, and, it appearing that the property upon which the oil and gas mining lease was given has been resold, a recovery of the full contract price cannot be changed to one for damages, for the reason that the damages to which the plaintiff might be entitled under this state of facts, were the action properly brought, are not alleged and set out in the petition."

The demurrer was sustained by the court, to which ruling the plaintiff excepted.

On April 21, 1915, the plaintiff, Sartain, filed his motion for new trial in the court below on the following grounds:

"(1) Errors of law occurring at the trial and excepted to by the plaintiff at the time.

"(2) The court erred in sustaining the demurrer of the defendant to the evidence of the plaintiff at the close of the plaintiff's testimony.

"(3) That the court erred in overruling the plaintiff's motion for permission to reopen the case after the demurrer had been interposed and before finally passed on by the court, and in not permitting the plaintiff to introduce evidence offered by him.

"(4) The court erred in rendering judgment herein against plaintiff and in favor of the defendants."

On May 12, 1915, the court entered an order denying the plaintiff's motion for new trial and allowing time for case-made. On July 9, 1915, the court made an order extending the time for presenting, settling, and signing of the case-made, which was entered of record. The case-made was settled and signed on July 31, 1915, and filed in the office of the clerk of the district court for Tulsa county, Okla., on August 28, 1915. Petition

in error was filed in this court on September 10, 1915, with case-made attached, with a waiver of summons in error for all parties, and entry of appearance by attorneys for the respective parties.

The assignments of error are as follows:

"I. The said court erred in overruling the motion of plaintiff in error for a new trial.

"II. The court erred in overruling the plaintiff's objection to defendants' question to the witness W. P. Sartain as follows: 'Q. When was this contract, this deal that you made with the defendants to deliver them this lease, made?'

"III. The court erred in overruling the plaintiff's objection to the defendants' question to the witness W. P. Sartain as follows: 'Q. They were there when the lease was drawn, weren't they?'

"IV. The court erred in overruling the plaintiff's objection to the introduction in evidence of Defendants' Exhibit 1.

"V. The court erred in overruling the plaintiff's objection to defendant's question to the witness W. P. Sartain as follows: 'Q. Wasn't he holding the land under that lease?'"

"VI. The court erred in overruling the plaintiff's objection to defendants' question to the witness, W. P. Sartain as follows: 'Q. I am asking you if at any time you had any conversation with him. I am giving you all the latitude in the world.'

"VII. The court erred in overruling the plaintiff's objection to the defendants' question to the witness W. P. Sartain as follows: 'Q. I understand that it was something pertaining to that; I want to know what it was, and I would like to have the jury know.'

"VIII. The court erred in refusing to instruct the jury, at plaintiff's request, that the following remark of counsel in the presence of the jury should not be considered by them, to wit: 'Mr. Hatch: I want to be fair with the witness; I have tried to get the witness to tell the truth about this, and he had dodged me every time he could.'

"IX. The court erred in sustaining defendants' objection to plaintiff's question to the witness reading as follows: 'Q. You may state now whether you ever informed or notified the Coody Oil Company, either through Mr. Kemp or other officers, that because of their having failed to comply with terms of the departmental lease that the lease was null and void and that you considered it at an end?'

"X. The court erred in refusing to permit the plaintiff to prove by the witness W. P. Sartain that he notified Mr. Kemp, either president or vice president of the Coody Oil Company, that he considered the departmental lease null and void from and after the time of such notice, for the reason that the lessee in the lease had not drilled a well or

had not commenced one, and had not complied with the terms of the lease, and that this notice was given to the Coody Oil Company by and through its representative some time prior to the conclusion of the contract between plaintiff and the defendant P. G. Walker.

"XI. The court erred in refusing the request of plaintiff to reopen the case for the purpose of offering further proof as follows: By the defendant Walker that he wrote to the plaintiff certain letters, and then after the letters are identified by said defendant Walker to introduce the letters which will show that the defendants at no time raised any question about the title or gave any reason for not taking the lease and complying with the contract, except that their attorneys had disapproved of the title on account of the departmental lease which has been introduced in evidence.

"XII. The court erred in sustaining the defendants' demurrer to the evidence."

Did the trial court err in sustaining the defendants' demurrer to plaintiff's evidence at the close thereof? The court had previously overruled the defendants' demurrer to plaintiff's petition, as we have already seen. Plaintiff substantially proved by competent evidence the averments of his petition and the statements of his counsel in the opening statement on behalf of plaintiff to the jury. The demurrer admitted this competent evidence as true and raised a question of law. There were issues of fact squarely raised, joined, and presented by the pleadings. It was a suit, the subject-matter of which, under our Code of Civil Procedure, entitled either side to a jury as a demandable right. The court should have overruled the demurrer of the defendants to the plaintiff's evidence and proceeded to hear the entire case, and should have submitted the same to the jury under proper instructions as to the law.

"Did the court err in sustaining the demurrer to the plaintiff's evidence? In other words, was the evidence offered by plaintiff sufficient to make a prima facie case? If so, the court erred in sustaining a demurrer thereto; otherwise not. In considering the evidence with a view to determining this question, let us consider for a moment what is admitted by defendants' demurrer in order to determine the probative force to be given to the evidence adduced by the plaintiff.

"It is a well-settled rule that a demurrer to the evidence admits all the facts which the evidence tends to prove or of which there is any evidence, however slight, and all inferences which can be logically and reasonably drawn from the evidence. 6 Enc. of Pl. & Pr. p. 441; K. C. R. Co. v. Cravens, 43 Kan. 650, 23 Pac. 1044; Mo. Pac. R. R. Co. v. Goodrich, 38 Kan. 224, 16 Pac. 439; Wolf v. Washer, 32

Kan. 533, 4 Pac. 1036; Christie v. Barnes, 33 Kan. 318; 6 Pac. 599.

"In Brown, Administrator, v. Atchison, T. & Santa Fe Railway Co., 31 Kan. 16, 1 Pac. 610, the court says: 'But the decision of a case by the court upon a demurrer to the evidence is entirely unlike either the decision of a case by the jury upon the evidence or the decision of a case by the court upon a motion for a new trial; for, where the court sustains a demurrer to the evidence, the court must be able to say that, admitting every fact that is proved which is favorable to the plaintiff, and admitting every fact that the jury might fairly and legally infer from the evidence favorable to the plaintiff, still the plaintiff has utterly failed to make out some one or more of the material facts of his case. * * *'

"In Myers v. Presbyterian Church of Perry, 11 Okla. 551, 69 Pac. 876, the court said: 'A demurrer to the evidence not only admits the facts as proven to be true, but admits such facts as may be reasonably and rationally inferred from the facts proven. If there is evidence fairly tending to establish each material averment of the petition, it is error to sustain a demurrer to plaintiff's evdence'—citing Jaffray v. Wolf, 1 Okla. 312, 33 Pac. 945; Edmisson v. Drumm-Flato Commission Co., 13 Okla. 440, 73 Pac. 958; Johnson v. Hays, 6 Okla. 582, 55 Pac. 1068.

"Let us turn to the evidence and see 'if there is evidence fairly tending to establish each material averment of the petition.' If so, this case must be reversed; otherwise not. The proof adduced by plaintiffs shows that they were the owners of a tract of land in Oklahoma; that defendants were the owners of a tract of land in Missouri; that, relying on certain false and fraudulent representations made by defendant to plaintiffs, they mutually agreed to and did exchange said lands, together with warranty deeds therefor; that the lands in Missouri were shortly thereafter ascertained by plaintiffs not to be as represented and a part thereof wholly worthless; that thereupon plaintiff promptly notified defendants to that effect, and offered to rescind the trade and reconvey the lands to defendants; that said lands had been kept by them in statu quo—is sufficient to prove a prima facie cause of action, and a demurrer to the evidence, sustained by the trial court, was error." Clark et al. v. O'Toole et al., 20 Okla. 319, 94 Pac. 547; Ziska v. Ziska et al., 20 Okla. 634, 95 Pac. 254, 23 L. R. A. (N. S.) 1, note; Conklin v. Yates et al., 16 Okla. 266, 83 Pac. 910; Shawnee L. & P. Co. v. Sears, 21 Okla. 13, 95 Pac. 449; Scully v. Williamson, 26 Okla. 20, 108 Pac. 395, 27 L. R. A. (N. S.) 1089, Ann. Cas. 1912A, 1265; St. L. & S. F. R. Co. v. Jamieson, 20 Okla. 654, 95 Pac. 417; Plotner v. Chillson & Chillson, 21 Okla. 224, 95 Pac. 775, 129 Am. St. Rep. 776; Belcher v. Whitlock, 6 Okla. 691, 56 Pac. 23; Jansen v. City of Atchison, 16 Kan. 358; Kansas Pacific Ry. Co. v. Couse, 17 Kan. 571; Waterson v. Rogers, 21 Kan. 529; Rowland v. Shaw, 29 Kan. 438.

"Court may direct verdict where facts undisputed or of such conclusive character that court in sound judicial discretion would be compelled to set aside verdict returned in opposition to it." Neeley v. Southwestern Cotton Seed Oil Co., 13 Okla. 356, 75 Pac. 537, 64 L. R. A. 145; Guss v. Federal Trust Co., 19 Okla. 138, 91 Pac. 1045; Metropolitan Ry. Co. v. Fonville, 19 Okla. 283, 91 Pac. 902; Jackson v. Kincaid et al., 4 Okla. 554, 46 Pac. 587; Chaddick et al. v. Lindsay, 5 Okla. 616, 49 Pac. 940; Flersheim Merc. Co. v. Gillespie, 14 Okla. 143, 77 Pac. 183; Frick v. Reynolds et al., 6 Okla. 638, 52 Pac. 391; Harris et al. v. M., K. & T. Ry. Co., 24 Okla. 341, 103 Pac, 758, 24 L. R. A. (N. S.) 858; Baker v. Nichols & Shepard Co., 10 Okla. 685, 65 Pac. 100; Cooper v. Flesner et al., 24 Okla. 47, 103 Pac. 1016, 23 L. R. A. (N. S.) 1180, 20 Ann. Cas. 29.

"Question is whether there is enough competent evidence to reasonably sustain verdict. All evidence in conflict with evidence against which action is to be taken must be eliminated, leaving solely the evidence favorable to party against whom such action is leveled." Cooper v. Flesner et al., 24 Okla. 47, 103 Pac. 1016, 23 L. R. A. (N. S.) 1180, 20 Ann. Cas. 29.

"Incompetent testimony received over objection should be eliminated." Clinton National Bank v. McKennon, 26 Okla. 835, 110 Pac. 649; Frick v. Reynolds et al., 6 Okla. 638, 52 Pac. 391; Sullivan v. Phenix Ins. Co., 34 Kan. 170, 8 Pac. 112; Gillett v. Insurance Co., 53 Kan. 108, 36 Pac. 52.

"Peremptory instruction should only be given where all reasonable minds would draw the same conclusion and that such conclusion would be against material averments of plaintiff's petition." A. V. & W. R. Co. et al. v. Benson, 26 Okla. 306, 109 Pac. 219.

"It is error to direct a verdict where there is a controverted question of fact before jury." Farmers' State Bank et al. v. Spencer, 12 Okla. 597, 73 Pac. 297.

"Error where evidence fairly tends to support all necessary averments of petition." Hanna v. Mosher et al., 22 Okla. 501, 98 Pac. 358.

"Improper when there is a material disputed question of fact." Brown v. Baird et al., 5 Okla. 133, 48 Pac. 180.

"Error when there is a material controverted question of fact upon which reasonable minds might fairly differ." Lane v. Choctaw, etc., R. R. Co., 19 Okla. 324, 91 Pac. 883.

"Where demurrer is sustained, it is equivalent to an instruction to jury to find for demurring party." Gruble v. Ryus, 23 Kan. 195.

It is true that in this state a demurrer to the evidence is a statutory proceeding, being authorized by section 5002, Rev. Laws, 1910. But—

"it is the settled rule that a demurrer to the evidence admits every fact which the evidence in the slightest degree tends to prove and all inferences or conclusions that may be reasonably and logically drawn from the evidence." William Cameron & Co. v. Henderson, 40 Okla. 648, 140 Pac. 404; St. Louis & S. F. R. Co. v. Snowden, 48 Okla. 115, 149 Pac. 1084.

Hence, as stated in the case supra, the vital question in the case at bar is:

"Does the evidence in the slightest degree tend to prove that the defendants were liable to the plaintiff?"

This court has gone to the extent of holding, where there was any conflict in the plaintiff's evidence that would make any part of it unfavorable to plaintiff or sustain the defense, that in passing upon the demurrer to the evidence the court should consider such evidence as being withdrawn. This court in the case of Ziska v. Ziska, 20 Okla. 634, 95 Pac. 254, 23 L. R. A. (N. S.) 1, said:

"This court will consider as withdrawn all the evidence which is most favorable to the party demurring." Miller v. Marriott, 48 Okla. 179, 149 Pac. 1164.

The court further said in Miller v. Marriott, supra:

"If the inference to be drawn from the evidence is a reasonable one, although not a necessary one, the court will not invade the province of the jury by taking from it the right to pass on the fact to be deduced from such inference."

"A demurrer to the evidence not only admits the truth of the evidence of the demurree, but also all the facts which the evidence in any degree tends to prove, and is a waiver of all the evidence of the demurrant which conflicts with that of his adversary and of inferences from his own evidence." 7 Standard Ency. Procedure, p. 5, and authorities cited.

"Where the question of a variance between the pleading and proof is first raised by a demurrer to the evidence, it will not be regarded as fatal, when it appears that the party objecting was neither surprised, misled, nor prejudiced thereby." Collier v. Monger, 75 Kan. 550, 89 Pac. 1011.

In this case it seems clear to us, in the light of the evidence and of the foregoing authorities, that every material allegation of the plaintiff's petition has been proved by competent evidence.

For the reasons stated, we hold the trial court committed reversible error in sustaining the demurrer of the defendants to the plaintiff's evidence and in dismissing the petition and cause of action, and in rendering judgment that plaintiff take nothing by his

suit, and in taxing the costs against the plaintiff, and the judgment of the lower court herein is reversed, and the cause remanded to the district court of Tulsa county, Okla., with directions to said court to reinstate said petition and cause of action, to set aside the judgment and order overruling the plaintiff's motion for a new trial, and to enter an order sustaining the same, and to set aside the final judgment or journal entry rendered by the court herein, to grant the plaintiff a new trial, and to permit plaintiff to amend his petition touching the $2,000 received by plaintiff for a lease on the lands in question after the defendants had failed, neglected, and refused to close up their contract with plaintiff for the oil and gas lease in question and conformably to our law relating to and governing the procedure on amendments, and for such other proceedings as may be proper under the law and in the light of this opinion.

By the Court:   It is so ordered.